**Oscar Ray McDONALD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

July 1, 1977.

Jack E. Farley, Public Defender, Kevin M. McNally, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William H. Mohr, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On January 12, 1976, Oscar Ray McDonald was indicted by the Grand Jury of Fayette County, Kentucky, for the December 3, 1975, killing of his stepfather. Appellant pled insanity. After a two-day trial he was found guilty of first degree manslaughter and sentenced to 20 years in the penitentiary. On this appeal appellant's complaints are:

"I. Did appellant's conviction of first degree manslaughter deny his right to due process under the Fourteenth Amendment to the United States Constitution since the prosecution failed to prove his sanity beyond a reasonable doubt?

II. Did the use of appellant's request for counsel and decision to remain silent during custodial police interrogation as evidence of sanity deprive him of due process of law?

III. Did the trial court commit reversible error and deny the appellant's constitutional right to a fair trial by permitting the Commonwealth to engage in improper conduct during closing argument?"

Appellant, 24 years of age, lived in Columbus, Ohio, and was in Lexington, Kentucky, to visit with his mother and stepfather. When he first arrived, they were not at home. He then visited with other friends and, while there, drank some beer and smoked marijuana. Later, when he returned to his mother's home, he was greeted by his stepfather. After the exchange of a few pleasantries, appellant excused himself and went to the bathroom. When he returned he shot his stepfather with a handgun three times, until it jammed. He then hit him with the butt of the gun, knocking him down, and continued to beat him on the head. Appellant then dropped the handgun and went looking for a shotgun, but did not find one. Instead, he found a knife with which he cut his stepfather's throat, stabbed him in the front part of his body ten times, and in the back part eleven times. He then dropped the knife and telephoned the police.

There was much testimony relating to appellant's unusual conduct and demeanor. Four professionals testified as to his emotional and mental capacity. For the defense, one psychologist testified that appellant had a normal IQ and that he was a paranoid schizophrenic who could no more control a murderous impulse than he could stop a sneeze. A psychiatrist described appellant as being a paranoid schizophrenic and felt he knew right from wrong, but could not control his impulse to kill. The Commonwealth introduced a psychologist who testified that appellant had a normal IQ, with no serious psychiatric disorder. Also, the Commonwealth introduced a psychiatrist who testified that appellant had no serious mental disorder.

Appellant first attacks the proposition that a defendant has the burden of proving insanity. It is his contention that the mental condition of the appellant is an integral part of the crime and must be proven the same as any other element of the offense. Consequently, appellant opines that the due process clause of the Fourteenth Amendment to the Constitution of the United States places the burden on the Commonwealth to prove sanity beyond a reasonable doubt, rather than the burden being on the defendant to prove his insanity, even though the degree of proof is merely to the satisfaction of the jury. The attack, therefore, is twofold; first, it is contended that the Commonwealth not only has the burden of proving sanity but, secondly, it must prove sanity beyond a reasonable doubt.

The General Assembly, in dealing with the burden of proof and the responsibility for crime, has enacted KRS 500.070 and 504.020. KRS 504.020 provides:

"*Mental disease or defect*—(1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(2) As used in this chapter, the term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(3) A defendant may prove mental disease or defect, as used in this section, in exculpation of criminal conduct. (Enact. Acts 1974, ch. 406, § 39, effective January 1, 1975.)"

KRS 500.070 provides:

"*Burden of proof—Defenses*—(1) The commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3). This provision, however, does not require disproof of any element that is entitled a 'defense,' as that term is used in this code, unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

(2) No court can require notice of a defense prior to trial time.

(3) The defendant has the burden of proving an element of a case only if the statute which contains that element provides that the defendant may prove such element in exculpation of his conduct. (Enact. Acts 1974, ch. 406, § 7, effective January 1, 1975.)"

In support of his argument appellant relies upon *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and the majority opinion in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), as well as Mr. Justice Frankfurter's dissent in *Leland v. State of Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1951). A sufficient answer, contrary to the appellant's argument, is contained in a comprehensive treatment of the subject in *Patterson v. State of New York,* —— U.S. ——, 97 S.Ct. 2319, 52 L.Ed.2d 281 (rendered June 17, 1977).

The law in this commonwealth requires a defendant only to prove insanity to the satisfaction of a jury. It does not violate appellant's due process rights as encompassed in the Fourteenth Amendment to the Constitution of the United States.

In Issues II and III counsel for appellant vigorously criticizes the interrogation of witnesses by the attorney for the Commonwealth and severely criticizes his closing argument to the jury. He asserts that it was prejudicial error for the trial court to permit a witness for the Commonwealth to testify that while in the course of his interrogation appellant requested the assistance of counsel. The interrogation then ceased and appellant was permitted to contact and confer with an attorney of his own choice. Appellant complains that the Commonwealth's Attorney, in his closing argument, erred in challenging appellant's plea of insanity by referring to his request for counsel and his refusal to make a written statement as the action of a person not out of touch with reality. During the course of the Commonwealth's Attorney's interrogation of the medical witnesses, he asked each of them whether there was a psychiatric ward at the LaGrange Reformatory where inmates may receive treatment. Each witness responded in the affirmative. The Commonwealth's Attorney, in his closing argument, commented on the availability of this psychiatric service. At the behest of the Commonwealth's Attorney, one of the medical witnesses described the procedure used by a person having been found to be insane to secure his release, and complaint is also made of this line of interrogation and of his argument that the appellant could be released from prison if the examining physician determined him not to be insane. Also, criticism is leveled at the Commonwealth's Attorney for his description to the jury of an insane person.

A careful examination of the transcript of the record in this case reflects that no objection was made to any of the interrogation by the Commonwealth's Attorney, nor was any objection made to any of the remarks made by him in his closing argument to the jury.

The appellant is guaranteed a fair trial. This does not mean, however, a perfect trial, free of any and all errors. *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). What it does mean is " * * * that a litigant is entitled to at least one tolerably fair trial of his action." *Neely v. Strong,* 186 Ky. 540, 217 S.W. 898 (1920); *Berning v. Commonwealth,* Ky., 550 S.W.2d 561 (rendered April 22, 1977).

We are not at liberty to ignore the procedural prerequisites in preserving alleged errors for review by this court. RCr 9.22 and 10.12. In *Turner v. Commonwealth,* Ky., 460 S.W.2d 345 (1970), this court said:

" * * * The policy of RCr 9.22 and 10.12 is to require a defendant in a criminal case to present to the trial court those questions of law which may become issues on appeal. The appellate court reviews for errors, and a non-ruling is not reviewable when the issue has not been presented to the trial court for decision. * * * "

In view of the foregoing, this court is not at liberty to review the alleged procedural errors.

The judgment is affirmed.

All concur.