Wilson GUNTER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Nov. 21, 1978.

Rehearing Denied Feb. 27, 1979.

Jack E. Farley, Public Advocate, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The appellant, Wilson Gunter, was indicted by the Pulaski County Grand Jury on January 14, 1976, for the murder of Judy Cash (KRS 507.020) and first-degree arson of his own apartment (KRS 513.020). He was convicted of murder and second-degree arson and sentenced to 20 years' imprisonment on the murder charge and five years' on the arson charge, the sentences to run concurrently. On appeal to this court the conviction was reversed by reason of prejudicial statements made by the prosecuting attorney in his closing argument to the jury.

Upon return of the case to the Pulaski Circuit Court, the appellant again was tried for murder and first-degree arson, the same offenses on which he was first tried. He was found guilty of murder and second-degree arson as before, and was sentenced to serve 20 years' imprisonment for murder and ten years' for arson. These sentences were ordered to run consecutively. On this appeal the appellant cites seven alleged errors.

## I

The appellant argues that the trial court erroneously permitted the Commonwealth to introduce proof that he stood mute and did not offer exculpatory evidence after his arrest. On the other hand, the Commonwealth argues that its interrogation was designed to impeach the appellant's testimony by using his post-arrest statements. Appellant's trial counsel did not object to any of this questioning, nor did he object to the comments made by the Commonwealth's Attorney in his closing argument. Since the interrogation was not objected to, its competency is not preserved for appellate review. *Wylie v. Commonwealth,* Ky., 556 S.W.2d 1 (1977); *McDonald v. Commonwealth,* Ky., 554 S.W.2d 84 (1977). The argument of the Commonwealth's Attorney was not preserved for appellate review since it was not objected to and the court afforded an opportunity to pass on its competency. *Brown v. Commonwealth,* Ky., 551 S.W.2d 557 (1977).

## II

The appellant next charges that the trial judge erroneously permitted the Commonwealth's Attorney to comment on the failure of his wife to appear and testify. He argues that such conduct on the part of the court was error of such magnitude that it requires reversal.

The appellant was being questioned by his own paid counsel, as follows:

"Q146. When you got there, what did you do?

A. I called my wife, my ex-wife, my wife.

Q147. Are you still married to her?

A. Yes, sir.

Q148. Where did she live?

A. Where did she live?

Q149. Yes?

A. On Middlebrook Pike.

Q150. Explain to us the circumstances, your conversation with your wife?

A. She had mononucleosis, she had been sick two or three weeks.

Q151. Now

*Hon. Harold D. Rogers*

Object to this unless the wife is present to testify.

Your Honor, we cite the Coffey rule, move to set aside and strike.

*At Bench Conference Between the Court and Counsel Out of Hearing of Jury.*

*The Court*

What has happened here

*Hon. John G. Prather, Jr.*

He can describe it from the fact that he called his wife.

*Hon. Harold D. Rogers*

The person that's not here to testify, you can't repeat what they said, can't testify, not subject to cross-examination.

*The Court*

I don't think we want to say too much about that person not being here.

*Hon. Harold D. Rogers*

No way for me to object to the hearsay rule.

*The Court*

I am going

*Hon. John G. Prather, Jr.*

I can instruct him not to say what she said.

*The Court*

Did you make some kind of motion?

*Hon. John G. Prather, Jr.*

Yes, I moved to set aside the swearing of the jury and to continue the case based on the comment of the prosecution that the wife was not here.

*Hon. Harold D. Rogers*

I didn't say that.

*The Court*

Well, overruled, subject to what we have said here.

*Testimony Resumed Before Jury.*

Q153. Who did you call?

A. My wife.

Q154. What time was it when you called her?

A. Approximately ten thirty.

Q155. How long did you talk to her?

A. I'd say about thirty, forty-five minutes or an hour.

Q156. That was a long time, did you go to see her?

A. No.

Q157. Why?

A. She had mononucleosis and I had a

*Hon. Harold D. Rogers*

  Object.

*The Court*

  Overruled."

Counsel for the Commonwealth argues that his reference to the appellant's wife was proper. We think that it was. First of all, this colloquy is not of the substance that this court criticized in the former consideration and reversal of this case. It does not contain the impropriety discussed in *Gossett v. Commonwealth*, Ky., 402 S.W.2d 857 (1966). Appellant's counsel himself was attempting to place before the jury dialogue that appellant had with his wife in such a manner that it could not be attacked by the Commonwealth. As we view the statements of the Commonwealth's Attorney, there was no comment on the failure of the appellant's wife to appear and testify. The proposed testimony of appellant was purely hearsay and the objections of the Commonwealth's Attorney were proper and well taken. The court did not err in refusing to grant a mistrial.

### III

The appellant claims to have been prejudiced when the court permitted the prosecuting attorney to read the transcript of testimony given by two witnesses at the former trial because no good-faith effort was made to secure their attendance. They had formerly testified, but were not present when called by the prosecuting attorney to testify in the present action. Subpoenas had been issued for each of them, without avail. They were reported to be residing outside the Commonwealth of Kentucky, one in Tennessee and the other in Indiana. As these two witnesses were called to testify, counsel for appellant objected to the use of their former testimony because, "The proof taken was not taken for the purpose of being read at a later trial—it was proof taken for circumstances then and there existing, we would not have an opportunity to examine her at this point as to any discovery evidence. Let me see your testimony? What efforts were made to get her here?" The appellant did not object to the use of this testimony on the grounds that no good-faith effort had been made to secure the attendance of these witnesses. The nature of the objection now made by appellate counsel to the use of this testimony was not raised in the trial court so that the trial judge could be afforded an opportunity to pass on it; consequently, it has not been preserved for review. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977).

### IV

The appellant argues reversible error because the trial judge permitted witnesses to testify as to statements made by the deceased relating to her association with the appellant. On the first appeal of this case we considered the admissibility of this same testimony and said:

" . . . We have studied the character of the testimony to which we have been referred and, when the particular questions are considered separately, some may be technically erroneous; however, when these questions are considered together and in their relation to the whole case, they are not considered to be prejudicial."

The appellant argues that "The law of the case is that it was error to introduce this incompetent hearsay evidence." Very seldom, if ever, there is a trial of any magnitude that is error free. The error or errors in a proceeding entitling an accused to reversal of a judgment must be of such magnitude that it cannot reasonably be held that the accused got a tolerably fair trial. *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977). The appellant has failed to call this court's attention to any occurrence on his second trial, the one presently on appeal, that would raise the challenged evidence above its nonprejudicial effect. The law of the case is, therefore, that we will not reconsider the admissibility of this evidence.

## V

The appellant next argues that he was placed in double jeopardy when compelled to go to trial the second time for the first-degree arson charge. Counsel for the Commonwealth concurs, as does this court.

We note that on appellant's first trial, in addition to being charged with murder, he was charged with the offense of first-degree arson. The jury was instructed on both first and second-degree arson, and it found him guilty of arson in the second degree. This had the effect of acquitting him on the charge of first-degree arson. *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

In *Davis v. Commonwealth*, Ky., 561 S.W.2d 91 (1978), we went into a detailed discussion of the subject of double jeopardy, and we analyzed the nature of the protection afforded by it. In doing so, we spoke of the holding in *Price v. Georgia*, supra, in the following language:

"Price was tried for murder and found guilty of the lesser included offense of voluntary manslaughter. After the verdict had been set aside by reason of a trial error he was again tried for the same offense of murder, was again found guilty of voluntary manslaughter, and was sentenced to 10 years' imprisonment. Under *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), his conviction of manslaughter at the first trial constituted an acquittal of the murder charge, so he should not have been retried for murder. The second conviction having been affirmed on appeal to the Georgia courts, the Supreme Court granted certiorari and reversed. Rejecting the argument that because Price had not been convicted of murder the second trial of that charge was harmless error (the same basis on which we affirmed Davis' conviction of carnal knowledge though he had been improperly tried at the same time for rape), the Supreme Court said this:

'The Double Jeopardy Clause . . . is cast in terms of the risk of hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.' *Price v. Georgia*, at 398 U.S. 331, at 90 S.Ct. 1762.

Likewise it is in this case. Having been acquitted of a crime that was an essential element of the rape charge, Davis could not be tried for rape, and we cannot determine whether the trial of that charge induced the jury to find him guilty of the alternative offense of carnal knowledge. He therefore is entitled to be tried on the carnal knowledge count alone, unalloyed with the rape and detaining charges."

To paraphrase Price, we find we cannot determine whether the trial of the first-degree arson charge induced the jury to find the appellant guilty of the lesser offense of arson in the second degree. Therefore, he is entitled to be tried on the second-degree arson charge alone, unalloyed with arson in the first degree.

The Attorney General argues, however, that this issue was not raised in the trial court and therefore cannot be raised for the first time in the appellate court. In *Sherley v. Commonwealth*, Ky., 558 S.W.2d 615 (1977), we said:

"Sherley did not present this issue of double jeopardy or multiple prosecution to the trial court. However, we are persuaded that failure to preserve this issue for appellate review should not result in permitting a double jeopardy conviction to stand. . . ."

In view of *Sherley*, supra, we are of the opinion that the failure of the appellant to raise this double jeopardy question in the lower court did not constitute a waiver of the right to raise the issue for the first time on appellate review.

## VI

The appellant claims that he was denied due process of law by reason of the trial court's ordering his sentences to run consecutively rather than concurrently as they had after his first conviction. This issue becomes moot in view of our holding that the appellant is not now triable on the offense of arson in the first degree.

## VII

■ Lastly, the appellant charges that the reasonable-doubt instruction given by the court to the jury was constitutionally infirm. In both the arson and murder charges, the court instructed the jury it could find the appellant guilty "if, and only if, you believe from the evidence beyond a reasonable doubt all of the following . . . ." Thereafter, the court, on each count for which the appellant was being tried, defined reasonable doubt as,

"The term 'reasonable doubt' as used in these instructions means a substantial doubt, a real doubt, in that you must ask yourself not whether a better case might have been proved, but whether, after hearing all the evidence, you actually doubt that the defendant is guilty."

The infirmity argued by the appellant is that the use of the reasonable-doubt standards as defined by the court permits a conviction upon a showing of substantial doubt rather than reasonable doubt, which in and of itself enhances the obligation of the accused in establishing his innocence.

In *Urbanski v. Commonwealth*, Ky., 526 S.W.2d 7 (1975), the appellant challenged as erroneous an instruction on reasonable doubt which informed the jury that it must ask itself not whether a better case might have been proven, but whether, after hearing and considering all of the evidence, it sincerely doubted the defendant was guilty. We rejected this argument and upheld the instruction. The same attack has been made many times and on each occasion we have upheld the instruction. However, the appellant now takes comfort in the thought that *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), requires that this instruction be condemned and forever banished from our use. On June 8, 1978, this court amended RCr 9.56, dealing with reasonable doubt, and stated, "The instructions should not attempt to define the term 'reasonable doubt.'" Furthermore, in *Whorton v. Commonwealth*, Ky., 570 S.W.2d 627 (1978), we disposed of whether such an instruction was proper in the following language:

"* * * The long and short of it is that we can no longer approve this definition, but unless and until the highest judicial authority is willing to hold it constitutionally fatal, neither will this court do so. * * *"

The judgment of the Pulaski Circuit Court finding the appellant guilty of murder is affirmed, and insofar as it finds appellant guilty of arson in the second degree it is reversed.

PALMORE, C. J., and CLAYTON, JONES and STEPHENSON, JJ., concur.

LUKOWSKY, J., files a dissent, in which REED, J., joins.

LUKOWSKY, Justice, dissenting.

The majority quite correctly holds that it was prejudicial error to try Gunter for first-degree arson after he was convicted of only second-degree arson at his first trial and that a new trial on the charge of second-degree arson is required. *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). However, the majority affirms the murder conviction thereby tacitly rejecting Gunter's submission that the double jeopardy violation on the arson charge infects the murder conviction.

This result presupposes that the jury was able to isolate the murder and arson aspects of the joint trial onto separate and distinct projection screens and that the reflections of one had no halo effect on the other. The differential between first-degree and second-degree arson is knowledge or reasonable belief that another person, not an accomplice, is present in the building at the time the fire is set. The murder charged

**524**

here was intentional killing by strangulation. The first-degree arson charge was mentioned in the opening statement by the Commonwealth, in the trial judge's instructions to the jury and in the closing argument by the Commonwealth. The jury could well have believed that one charged with and prosecuted for callously burning an inhabited building would not hesitate to intentionally kill.

The question is not whether Gunter was actually prejudiced by the double jeopardy violation, but whether there is a reasonable possibility that he was prejudiced. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963); *United States ex rel. Hetenyi v. Wilkins* C.A.2d, 348 F.2d 844, 864 (1965), cert. denied sub nom. *Mancusi v. Hetenyi*, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). I can only speculate what would have happened at Gunter's trial had he been charged only with murder and second-degree arson. Under such circumstances I can not reach the legal conclusion that Gunter could not possibly have been prejudiced by repeated references to his burning an inhabited building. I am unable to reconstruct by hindsight on the basis of reasonable predictability of human behavior, a jurisprudential setting in which a jury could have been immunized, in theory or in fact, from the inflammatory references to callous behavior of which Gunter had been previously acquitted. *Levy v. Parker* C.A.3d, 478 F.2d 772, 797–799 (1973), cert. denied 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 651 (1975).

I would reverse the murder conviction as well as the second-degree arson conviction and remand the entire case for a new trial.

I am authorized to state that REED, J., joins in this dissenting opinion.