# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

State of West Virginia,
Plaintiff Below, Respondent

vs)  No. 13-1122 (Cabell County 09-F-023)

Robert Frazier,
Defendant Below, Petitioner

**FILED**

**October 30, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Frazier, by counsel, Crystal L. Walden, appeals the October 15, 2013, Order of the Circuit Court of Cabell County sentencing him to serve forty years in the penitentiary following his second degree murder conviction. The State, by counsel, Julie A. Warren, Assistant Attorney General, filed a response.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. We find no substantial question of law and a memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. For the reasons expressed below, the decision of the trial court is affirmed, in part, and vacated, in part.

### Factual and Procedural History

On August 25, 2008, petitioner shot his girlfriend, fifty-three-year-old Kathy Smith, in the head with a 12 gauge shotgun following a domestic dispute. This shot was instantaneously fatal. Petitioner was charged with first degree murder. Following a jury trial in 2010, petitioner was convicted of the lesser included offense of second degree murder. The trial court sentenced petitioner to forty years imprisonment. Petitioner appealed, and this Court reversed the conviction and granted a new trial on the basis that petitioner's rights under the Confrontation Clause found in the Sixth Amendment to the United States Constitution and article III section 14 of the West Virginia Constitution had been violated.[1]

In September of 2013, petitioner was tried again for the murder of Ms. Smith.[2] Throughout all of the proceedings, petitioner maintained that Ms. Smith's death was an accident. In the second trial, he testified that Ms. Smith pointed the shotgun at him during an argument and

---

[1] *See State v. Frazier,* 229 W.Va. 724, 731, 735 S.E.2d 727, 734 (2012) (finding trial court committed reversible error in allowing James Kaplan, M.D., then Chief Medical Examiner, to testify to autopsy report completed by different medical examiner, Robert Belding, M.D., who did not testify at trial).

[2] The State called Dr. Belding to testify in petitioner's second trial.

1

was killed accidentally when the shotgun discharged while the two struggled. Petitioner called a forensics expert as a witness, who opined that petitioner's explanation of the fatal shot to Ms. Smith was plausible even though the State's expert found no gunshot residue on Ms. Smith's hands.[3]

The State presented the testimony of Joshua Jackson, an acquaintance of petitioner, who was in the house at the time of the shooting. Mr. Jackson testified that during the argument petitioner grabbed the shotgun, said "I will f*cking show you, B*tch," and followed Ms. Smith into the bedroom. Mr. Jackson then heard a gunshot. Mr. Jackson testified that after the gunshot, petitioner climbed out of a window to escape with blood on his arms and shirt.

After the shooting, petitioner went to his sister's house to call his mother in California. Petitioner told his mother he "needed to get the f*ck out of town." The State also introduced petitioner's statement to law enforcement wherein he initially lied by stating that Mr. Jackson killed Ms. Smith. Petitioner eventually told authorities that the shooting was accidental. When asked why he did not call police or emergency personnel, petitioner replied, "I'm a f*cking dope dealer."

At the outset of the second trial, before jury selection, the trial court informed the parties that the State could present its case for first degree murder with the understanding that petitioner could not be convicted or sentenced accordingly. Petitioner objected and contended the second degree murder conviction in the initial trial amounted to an acquittal of first degree murder, and retrial for that offense violated his constitutional rights under the State and federal double jeopardy clause. W.Va. Const. art. 3, § 5, U.S. Const. Amend. V. The trial court rejected petitioner's argument and relied upon the procedure this Court set forth in syllabus point three of *State v. Cobb,* 166 W.Va. 65, 272 S.E.2d 467 (1980):

> When a new trial is granted upon appeal, a defendant in the new trial who was originally convicted of voluntary manslaughter cannot be convicted of a more serious degree of homicide or sentenced to a harsher penalty than he received at the original trial; however, proper procedure upon retrial is to submit the case to the jury under proper instructions for every degree of homicide which the evidence supports, and if the jury returns a verdict in the second trial for an offense greater than that returned in the first trial, the trial court should then enter judgment for the offense for which the first conviction was obtained.

*See also State v. Young,* 173 W.Va. 1, 7, 311 S.E.2d 118, 124 (1983) (holding trial court's imposition of sentence pursuant to jury verdict of first degree murder rendered at retrial, rather than pursuant to verdict of second degree murder rendered at original trial, constituted plain error and remanding for resentencing).

The State presented the case to the jury as if petitioner could be convicted of first degree murder. In her opening statement, the prosecutor stated that "at the close of this evidence the

---

[3] There was also no gunshot residue found on petitioner's hands, but he had changed clothes and washed the blood from his arms and hands before authorities apprehended him.

State will ask you to find the Defendant guilty of First Degree Murder for the premeditated, the deliberate, intentional, willful, and malicious killing of Kathy Gail Smith." Further, in closing statement, the prosecutor again referenced premeditation and asked the jury "to come back with a verdict of guilty of First Degree Murder." The trial court instructed the jury on the elements of first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. On the verdict form, the jury could choose from any of these offenses or find petitioner not guilty as charged.

On September 20, 2013, the jury returned its verdict finding petitioner guilty of second degree murder. Thereafter, the State submitted an interrogatory to the trial court by which the jury could find that the crime was committed with the use of a firearm under West Virginia Code § 62-12-13 (2014). Petitioner objected to this interrogatory because the State did not seek this determination at the first trial. The trial court overruled this objection and stated the firearm determination did not increase the sentence improperly but merely affected petitioner's eligibility for parole. The jury answered this interrogatory in the affirmative. Thereafter, the trial court entered a "Jury Verdict Order" on September 30, 2013.

At the sentencing hearing, the trial court stated petitioner showed a complete lack of remorse at both murder trials. On October 15, 2013, the trial court sentenced petitioner to forty years imprisonment, with credit for time served.[4] This is the maximum penalty for second degree murder. *See* W.Va. Code § 61-2-3 (2014). It is from this conviction and sentence that petitioner now appeals.

**Standard of Review**

On appeal, petitioner raises two assignments of error. Petitioner alleges the trial court violated his rights under the double jeopardy clause when it allowed the State to: 1) argue that petitioner was guilty of first degree murder; and 2) seek a determination that petitioner committed the crime with the use of a firearm. Petitioner's double jeopardy claims are reviewed de novo. Syl. Pt. 1, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996).

**Discussion**

Petitioner's primary submission is that he was forced to defend against a first degree murder charge for which he was acquitted at the first trial. The double jeopardy clause of the West Virginia Constitution provides, in part: "No person shall . . . be twice put in jeopardy of life or liberty for the same offence." W.Va. Const. art. 3, § 5.[5] The United States Supreme Court has

---

[4] The sentencing order does not reference the jury interrogatory pertaining to the firearm enhancement.

[5] The Fifth Amendment to the United States Constitution is nearly identical: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life and limb[.]" The scope of the Double Jeopardy Clause of the Fifth Amendment is at least coextensive with that of the double jeopardy clause in the West Virginia Constitution. *State v. Frazier,* 162 W.Va. 602, 625 n.16, 252 S.E.2d 39, 52 n.16 (1979).

held that the double jeopardy "prohibition is not against being twice punished, but against being twice put in jeopardy." *United States v. Ball,* 163 U.S. 662, 669 (1896).[6] In *Green v. United States,* 355 U.S. 184 (1957), the Supreme Court stated "the constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to *the hazards of trial and possible conviction* more than once for an alleged offense." *Id.* at 186 (emphasis added). In syllabus point two of *State v. Clayton,* 173 W.Va. 414, 317 S.E.2d 499 (1984), this Court held: "Our State and federal double jeopardy clauses prohibit retrial of a defendant on any charge for which he has received a judgment of acquittal or a court's determination that there was insufficient evidence to prove that charge at his first trial."

Petitioner maintains this case is akin to *Price v. Georgia,* 398 U.S. 323 (1970), where the defendant was tried for first degree murder and convicted of voluntary manslaughter. That conviction was reversed, and over counsel's objection, Price was retried for first degree murder. In the second trial, Price was convicted of voluntary manslaughter again. On appeal, the United States Supreme Court reversed and held that although Price was convicted of the lesser included offense, "the risk of conviction on the greater charge was the same in both cases and the Double Jeopardy Clause of the Fifth Amendment is written in terms of the potential or risk of trial and conviction, not punishment." *Id.* at 329. The Supreme Court reasoned there was no way to discount how the instructions on first degree murder impacted the jury's deliberations. *Id.* at 331; *see also Blueford v. Arkansas*, 132 S.Ct. 2044, 2052 (2012) (discussing *Green* and *Price* and holding double jeopardy clause does not bar second trial if first ended in mistrial).

Similarly, petitioner supposes the mere existence of the first degree murder charge may have kept the jurors from thoroughly considering his accidental shooting defense. Petitioner ultimately asserts this Court should overturn syllabus point three of *Cobb* because it cannot be reconciled with *Price* and *Green*. We disagree.

The flaw in petitioner's argument is the fact that he was *never in jeopardy* of a first degree murder conviction at the second trial. This crucial difference distinguishes *Price* and *Green*. "It is axiomatic that 'an accused must suffer jeopardy before he can suffer double jeopardy.'" *Sears*, 196 W.Va. at 330, 468 S.E.2d at 330 (quoting *Serfass v. United States,* 420 U.S. 377, 393 (1975)). The decisions in both *Price* and *Green* turn on the fact that, at their respective retrials, both defendants were actually at risk of being convicted of the same charge for which they were previously acquitted. Therefore, petitioner's reliance on *Price* and *Green* is misplaced here because the trial court instructed both parties that, despite the fact the jury would be instructed on first degree murder, if the jury found petitioner guilty of first degree murder, the trial court would enter an order for a second degree murder conviction. Therefore, we reject petitioner's double jeopardy argument because he was never at risk of being convicted of first degree murder at the second trial. Stated succinctly, under the double jeopardy clause the State was prohibited from subjecting petitioner to the hazards of trial and possible conviction for first

---

[6] West Virginia Code § 61-11-13 (2014) is consistent with *Ball*. The statute provides that "[a] person acquitted by the jury upon the facts and merits on a former trial may plead such acquittal in bar of a second prosecution for the same offense, notwithstanding any defect in the form or substance of the indictment or accusation on which he was acquitted."

4

degree murder more than once; syllabus point three of *Cobb* removes that possibility by directing the trial court to enter judgment for the lesser offense. 166 W.Va. 65, 272 S.E.2d 467.

We find support for our holding in *Morris v. Mathews*, 475 U.S. 237 (1986), where the United States Supreme Court stated that *Price* "did not impose an automatic retrial rule whenever a defendant is tried for a jeopardy-barred crime and is convicted of a lesser included offense." *Id.* at 245.[7] This Court is unpersuaded by petitioner's attempt to set aside the entire conviction and have yet another trial, "particularly since one of the purposes of the Double Jeopardy Clause is to promote finality by avoiding multiple trials for the same offense." *Id.* at 250 (Blackmun, J., concurring). Upon careful review of the record, we find petitioner's conviction was not influenced by the prosecutor's comments regarding first degree murder. We also find no prejudicial error because the evidence offered by the State would have remained the same. The intent to kill is a required element of both first and second degree murder, but the distinguishing feature for first degree murder is the existence of premeditation and deliberation. *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982).

Petitioner's remaining assignment of error is that the trial court violated the double jeopardy clause by allowing a firearm determination at the second trial when the State did not seek this finding in the first trial. The State concedes error on this point and we agree. In *Young,* this Court held that "upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a ceiling above which no additional penalty is permitted." 173 W.Va. at 6, 311 S.E.2d at 123-4 (citing *State v. Eden,* 163 W.Va. 370, 384, 256 S.E.2d 868, 876 (1979)). The jury's finding that petitioner used a firearm in the commission of this offense under West Virginia Code § 62-12-13 effectively increased petitioner's sentence; he must serve one-third of it before becoming eligible for parole, instead of the usual one-fourth. *See* W.Va. Code 62-12-13(b)(1)(A). "Because parole is a means of shortening a sentence, the restriction thereof necessarily operates as a form of punishment." *Sears*, 196 W.Va. at 77 n.13, 468 S.E.2d at 330 n.13. Therefore, we find the firearm determination added three years and four months to petitioner's prison sentence improperly on retrial. To remedy this error on appeal, this

---

[7] Unlike *Morris*, however, we find no double jeopardy violation in this case. Nevertheless, we find the decision remains relevant to our analysis of *Cobb*. In *Morris*, the Supreme Court held: (1) the proper remedy for a concededly jeopardy-barred conviction for aggravated murder was to reduce the conviction to murder that was not jeopardy-barred; and (2) the burden then shifts to defendant to demonstrate a reasonable probability that he would not have been convicted of the non-jeopardy-barred offense absent the presence of the jeopardy-barred offense. 475 U.S. at 247. Assuming, *arguendo,* the jury found petitioner guilty of first degree murder at the second trial, the appropriate remedy under *Morris* would be for the trial court to follow the procedure outlined in syllabus point three of *Cobb* and reduce the conviction to second degree murder. The burden would then shift to petitioner to show that, but for the improper inclusion of the jeopardy-barred charge, the result of the proceeding probably would have been different. Based on the appendix record before this Court, we find no evidence of prejudice in this hypothetical scenario because the evidence offered by the State would have remained the same.

Court hereby vacates the September 30, 2013, "Jury Verdict Order" insofar as it finds petitioner committed the crime with the use of a firearm.

## Conclusion

For the foregoing reasons, we affirm the October 15, 2013, order of the Circuit Court of Cabell County entering judgment against petitioner for second degree murder and imposing the statutory sentence of forty years imprisonment. We further vacate the September 30, 2013, "Jury Verdict Order" insofar as it finds petitioner committed the crime with the use of a firearm.

Affirmed, in part,
and vacated, in part.

**ISSUED:** October 30, 2014

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin

No. 13-1122    -    <u>State of West Virginia v. Robert Frazier</u>

Davis, C.J., dissenting; joined by Benjamin, J.:


Let me be clear at the outset. The majority opinion has trammeled the Double Jeopardy Clause and has blatantly rejected the United States Supreme Court decision in *Price v. Georgia*, 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). In this proceeding, Mr. Frazier was prosecuted for first degree murder after being acquitted of that charge in an earlier proceeding. In the prior proceeding, this Court reversed Mr. Frazier's conviction for second degree murder and remanded the case for a new trial on second degree murder. *See State v. Frazier*, 229 W. Va. 724, 735 S.E.2d 727 (2012). The State chose to ignore the limitations of the remand and prosecuted Mr. Frazier for first degree murder. Although the jury returned a verdict convicting Mr. Frazier of second degree murder, and the trial court indicated it would not impose a first degree murder conviction if that verdict was returned by the jury, Mr. Frazier was still prejudiced by being tried on a theory of first degree murder. The majority opinion has ignored this patent violation of the Double Jeopardy Clause and affirmed Mr. Frazier's conviction. For the reasons set out below, I dissent.

7

**The Majority Opinion Demonstrates a Gross Misunderstanding Of, Or an Appalling Disregard For, the Double Jeopardy Clause, and Ignores Clear and Binding Precedent Handed down by the United States Supreme Court in *Price v. Georgia***

Following a brief discussion of general principles pertaining to the Double Jeopardy Clause, and a review of other lines of decisions by the United States Supreme Court that support granting Mr. Frazier a new trial, I will demonstrate how the majority has utterly failed to apply binding precedent by the United States Supreme Court that is directly on point with the instant matter by refusing to follow *Price v. Georgia.*

1. **The Double Jeopardy Clause.** Before I address the merits of my dissent, some cursory remarks about the Double Jeopardy Clause of the federal constitution are in order. To begin, the Double Jeopardy Clause of the Fifth Amendment commands that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." *See Monge v. California*, 524 U.S. 721, 727, 118 S. Ct. 2246, 2250, 141 L. Ed. 2d 615 (1998) ("The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'"). As a general matter, "[t]he Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n.1, 114 S. Ct. 1937, 1941 n.1, 128 L. Ed. 2d 767

8

(1994). Under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106, 123 S. Ct. 732, 736-37, 154 L. Ed. 2d 588 (2003). "The goal of the Double Jeopardy Clause [is] to prevent against a second prosecution for the same offense after acquittal." *Price v. Vincent*, 538 U.S. 634, 641, 123 S. Ct. 1848, 1853, 155 L. Ed. 2d 877 (2003). The United States Supreme Court has "defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, ___ U.S. ___, 133 S. Ct. 1069, 1074-75, 185 L. Ed. 2d 124 (2013). This includes an "implied acquittal which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses." *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S. Ct. 2536, 2542, 81 L. Ed. 2d 425 (1984). The decision in *Evans* also noted that, even "[a] mistaken acquittal is an acquittal[.]" *Evans*, ___ U.S. ___, 133 S. Ct. at 1074. Because an implied acquittal carries the same constitutional weight as an actual acquittal, "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's [implied or actual] acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119, 129 S. Ct. 2360, 2366, 174 L. Ed. 2d 78 (2009).

2.     **United States Supreme Court Cases That Generally Support Awarding Mr. Frazier a New Trial.** As outlined below, two lines of Double Jeopardy

Clause cases by the United States Supreme Court require that Mr. Frazier be awarded a new trial.

To begin, in *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), the United States Supreme Court applied the Double Jeopardy Clause to the relitigation of an *issue*. In doing so, the Court adopted collateral estoppel or issue preclusion,[1] as part of the Double Jeopardy Clause protections. *Ashe* involved six victims who were simultaneously robbed while playing poker. Separate trials were scheduled for each robbery victim. In the first case tried, the defendant was acquitted of being present during the robbery. Consequently, the defendant argued that he could not be prosecuted for robbing any of the remaining five victims in subsequent trials. This matter was presented to the Supreme Court on the question of whether the defendant could be prosecuted again on the issue of his being present at the robbery. To resolve this question, the Court had to decide whether the doctrine of issue preclusion was part of the Double Jeopardy Clause. The Court held in *Ashe* that issue preclusion "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443, 90 S. Ct. at 1194. Thus, the Supreme Court decided that issue preclusion was part of the Double Jeopardy Clause. The *Ashe* opinion noted that incorporation of issue preclusion as part of the Double Jeopardy Clause means that "its

---

[1]I will use the term "issue preclusion" to refer to this concept.

applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of 'fundamental fairness,' but a matter of constitutional fact[.]" *Ashe*, 397 U.S. at 442-43, 90 S. Ct. at 1193-94. *See also Bobby v. Bies*, 556 U.S. 825, 832, 129 S. Ct. 2145, 2151, 173 L. Ed. 2d 1173 (2009) ("the doctrine of issue preclusion is embodied in the Fifth Amendment guarantee against double jeopardy." (internal quotations and citation omitted)). In its application of constitutional issue preclusion, the *Ashe* opinion held:

> After the first jury had acquitted the petitioner of robbing [victim] Knight, Missouri could certainly not have brought him to trial again upon that charge. Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of [victim] Knight in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers.

*Ashe*, 397 U.S. at 446, 90 S. Ct. at 1195-96.

11

The application of constitutional issue preclusion recognized in *Ashe* is a grounds for granting the defendant a new trial in the instant case. In the instant proceeding, the jury determined by its verdict that Mr. Frazier did not commit "willful, deliberate and premeditated" homicide.[2] Under *Ashe*, constitutional issue preclusion prevents relitigation of the issue of "willful, deliberate and premeditated" homicide. In other words, the State could not retry the issue of whether Mr. Frazier committed a homicide with the *mens rea* of "willful, deliberate and premeditated." That issue, like the issue in *Ashe*, was resolved against the State in the first trial.

In addition to *Ashe*, a second line of Supreme Court decisions involving imposition of the death penalty illustrate the constitutional force of a jury's acquittal. In *Bullington v. Missouri*, 451 U.S. 430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981), the defendant was found guilty of capital murder during the guilt phase of the prosecution. During the sentencing phase, the jury found that the State did not prove that the defendant should receive the death penalty. Consequently, the defendant was sentenced to life in prison. The defendant appealed his conviction and was granted a new trial. Prior to the start of the second trial, the court determined that the State could not seek the death penalty if the defendant was again convicted of murder. The State sought and obtained from the Missouri Supreme Court a pretrial ruling that the State could seek the death

---

[2]*See* Syl. pt. 3, *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982) ("Where there has been an unlawful homicide by shooting and the State produces evidence that the homicide was a result of malice or a specific intent to kill and was deliberate and premeditated, this is sufficient to support a conviction for first degree murder.").

12

penalty in the second trial. The defendant appealed that ruling to the United States Supreme Court. The Supreme Court reversed and found that "the jury has already acquitted the defendant of whatever was necessary to impose the death sentence[.]" *Bullington*, 451 U.S. at 445, 101 S. Ct. at 1861 (internal quotations and citation omitted). Consequently, "the protection afforded by the Double Jeopardy Clause . . . is available to [a defendant], with respect to the death penalty, at his retrial." *Bullington*, 451 U.S. at 446, 101 S. Ct. at 1862.[3]

The ruling in *Bullington* was applied in *Arizona v. Rumsey*, 467 U.S. 203, 104 S. Ct. 2305, 81 L. Ed. 2d 164 (1984). During the sentencing phase of the capital murder prosecution in *Rumsey*, the trial judge, not the jury, found that the State had failed to establish the requirements for imposing the death penalty, and, accordingly, entered judgment sentencing the defendant to life in prison. The Supreme Court of Arizona concluded that the trial court had erred in its interpretation of what was required to impose the death penalty, and, therefore, reversed and remanded for a new sentencing proceeding. On remand, the defendant was sentenced to death. In the second appeal, the Supreme Court of Arizona reversed the death sentence after concluding that the decision in *Bullington* prohibited retrying the issue of imposition of a death sentence. The State

---

[3]The "opinion in *Bullington* established a 'narrow exception' to the general rule that double jeopardy principles have no application in the sentencing context." *Monge v. California*, 524 U.S. 721, 730, 118 S. Ct. 2246, 2251, 141 L. Ed. 2d 615 (1998).

filed an appeal with the United States Supreme Court. The Supreme Court affirmed the Arizona high court's decision. In doing so, the Supreme Court explained:

> The double jeopardy principle relevant to respondent's case is the same as that invoked in *Bullington*: an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge. Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding–whether death was the appropriate punishment for respondent's offense. The trial court entered findings denying the existence of each of the seven statutory aggravating circumstances, and as required by state law, the court then entered judgment in respondent's favor on the issue of death. That judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.

*Rumsey*, 467 U.S. at 210-11, 104 S. Ct. at 2310.

In *Bullington* and *Rumsey*, prosecutors sought to have the fact finders consider imposing the death penalty on the defendants on retrial, even though fact finders had previously determined the prosecutors failed to meet their burden of proof with

14

respect to imposing the death penalty in the first sentencing proceedings. The Supreme Court found that the Double Jeopardy Clause precluded such a reconsideration of the death penalty.

This State's equivalent to a death penalty is a conviction for first degree murder. In the instant proceeding, the jury found that the State failed to meet its burden of convicting the defendant of first degree murder. In this situation, as in *Bullington* and *Rumsey*, the State could not retry the defendant for first degree murder because the jury rejected that punishment in the first trial.

3.      *Price v. Georgia*, **Binding Precedent Requiring a New Trial.** Although I believe *Ashe* and *Bullington/Rumsey* provide clear authority for granting Mr. Frazier a new trial, another line of cases by the Supreme Court also dictate this same result. The facts of the instant case are squarely controlled by the decision in *Price v. Georgia*, 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). In *Price,* the defendant was charged with murder by the state of Georgia. The case went to trial and a jury returned a verdict of guilty to the lesser included crime of voluntary manslaughter. The conviction was reversed on appeal because of an erroneous jury instruction and a new trial was awarded. On remand, the prosecutor chose to retry the case as a murder prosecution. The defendant objected and argued that he could be tried only for voluntary manslaughter because the jury in the first case had acquitted him of murder. The trial

15

judge overruled the objection and the case was submitted to the jury on a murder charge. The jury once again returned a verdict of voluntary manslaughter.

The defendant in *Price* filed an appeal of his second conviction and argued that the Double Jeopardy Clause prevented the State from prosecuting him for murder, because the jury had acquitted him of that charge in the first trial. In making this argument, the defendant cited to the United States Supreme Court decision in *Green v. United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), which had held that the Double Jeopardy Clause prevented the federal government from retrying a defendant on a murder charge once a jury had convicted a defendant of the lesser charge of second degree murder in the first trial. In rejecting the argument and the decision in *Green*, the appellate court relied on a prior Georgia Supreme Court decision, *Brantley v. State*, 132 Ga. 573, 64 S.E. 676 (1909), which held:

> When a person has been indicted for murder and convicted of voluntary manslaughter, if he voluntarily seeks and obtains a new trial, he is subject to another trial generally for the offense charged in the indictment, and upon such trial he cannot successfully interpose a plea of former acquittal of the crime of murder or former jeopardy in regard thereto.

Syl., *Brantley*, 132 Ga. 573, 64 S.E. 676. The decision of the Georgia Supreme Court was appealed the United States Supreme Court. Relying upon its decision in *Green*, the United States Supreme Court concluded that the Double Jeopardy Clause prevented the

16

defendant from being retried on a murder charge. Therefore, the defendant was entitled to a new trial. The United States Supreme Court, in *Price*, reasoned as follows:

> Because the petitioner was convicted of the same crime at both the first and second trials, and because he suffered no greater punishment on the subsequent conviction, Georgia submits that the second jeopardy was harmless error. . . .
>
> We must reject this contention. The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, *we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.*

*Price*, 398 U.S. at 331-32, 90 S. Ct. at 1762 (emphasis added). *See also Blueford v. Arkansas*, ___ U.S. ___, 132 S. Ct. 2044, 2051-52, 182 L. Ed. 2d 937 (2012) ("In those cases, [*Price* and *Green*], we held that the Double Jeopardy Clause is violated when a defendant, tried for a greater offense and convicted of a lesser included offense, is later retried for the greater offense.").

17

Every relevant procedural aspect of *Price* is present in the instant case. In both cases the defendants were prosecuted for murder, but convicted of lesser included offenses. Both defendants were granted new trials after successful appeals. Both defendants were prosecuted on remand for the murder charge for which they had been previously acquitted. In the second trial, both defendants received the same conviction that had been obtained in their first trial. Both defendants appealed their second conviction on the ground that the Double Jeopardy Clause and precedent by the United States Supreme Court prevented the State from retrying them for murder. On appeal, both state appellate courts relied on state precedent to reject the decisions of the United States Supreme Court.[4] The defendant in *Price* was ultimately able to have the United

---

[4]In the instant case, the majority opinion relied upon *State v. Cobb*, 166 W. Va. 65, 272 S.E.2d 467 (1980), in order to reject the United States Supreme Court decision in *Price*. In syllabus point 3 of *Cobb* it was held:

> When a new trial is granted upon appeal, a defendant in the new trial who was originally convicted of voluntary manslaughter cannot be convicted of a more serious degree of homicide or sentenced to a harsher penalty than he received at the original trial; however, proper procedure upon retrial is to submit the case to the jury under proper instructions for every degree of homicide which the evidence supports, and if the jury returns a verdict in the second trial for an offense greater than that returned in the first trial, the trial court should then enter judgment for the offense for which the first conviction was obtained.

This syllabus point not only is inconsistent with *Price*, but it is inconsistent with the decisions of this Court as reflected in Syllabus point 2 of *State v. Clayton*, 173 W. Va. 414, 317 S.E.2d 499 (1984):

> Our State and federal double jeopardy clauses prohibit retrial of a defendant on any charge for which he has received a judgment of acquittal or a court's determination that there

18

States Supreme Court properly apply the law and grant him a new trial. I am hopeful that the defendant in the instant case also will have the United States Supreme Court properly apply the law, reverse the conviction, and grant him a new trial.

In the final analysis, except for the majority opinion in this case, courts around the country have unanimously recognized that "under the Federal constitutional prohibition against double jeopardy, the conviction of a lesser offense is treated as an implied acquittal of the greater offense, and the defendant cannot be retried on the greater offense where the conviction on the lesser offense is vacated on appeal." *Commonwealth v. Figueroa*, 9 N.E.3d 812, 830-31 (Mass. 2014). *Accord Connolly v. State*, 539 So. 2d 436, 443 (Ala. Crim. App. 1988); *State v. Butrick*, 558 P.2d 908, 912 (Ariz. 1976); *People v. Superior Court*, 2 Cal. Rptr. 2d 389, 399 (1991); *Ortiz v. District Court In and For Las Animas County*, 626 P.2d 642, 645 (Colo. 1981); *State v. Almeda*, 455 A.2d 1326, 1330 (Conn. 1983); *State v. Munson*, 243 A.2d 691, 692 (Del. Super. Ct. 1968); *Williams v. State*, 700 S.E.2d 564, 566 (Ga. 2010); *State v. Feliciano*, 618 P.2d 306, 311 (Haw. 1980), *superseded by statute on other grounds as recognized in State v. Kalaola,* 237 P. 3d 1109 (Haw. 2010); C*ausey v. State*, 266 N.E.2d 795, 797 (Ind. 1971); *Gunter v. Commonwealth*, 576 S.W.2d 518, 522 (Ky. 1978); *State v. Chaplin*, 286 A.2d 325, 334 (Me. 1972); *Commonwealth v. Hrycenko*, 630 N.E.2d 258, 263 (Mass. 1994); *People v. McPeters*, 448 N.W.2d 770, 773 (Mich. Ct. App. 1989); *State v. Favell*, 536 S.W.2d 47,

---

was insufficient evidence to prove that charge at his first trial.

19

51 (Mo. Ct. App. 1976); *State v. George*, 527 N.W.2d 638, 643 (Neb. Ct. App.,1995); *State v. Fielder*, 118 P.3d 752, 758 (N.M. Ct. App. 2005); *Kitt v. Haft*, 473 N.Y.S.2d 3, 4 (1984), *disapproved on other grounds by People v. Boettcher*, 513 N.Y.S.2d 83, 87 (1987); *State v. Arnold*, 392 S.E.2d 140, 150 (N.C. Ct. App. 1990); *Commonwealth v. Dooley*, 310 A.2d 690, 692 (Pa. Super. Ct. 1973); *Pope v. State*, 509 S.W.2d 593, 595 (Tex. Crim. App. 1974); *State v. Low*, 192 P.3d 867, 880 (Utah 2008); *State v. Linton*, 93 P.3d 183, 186-87 (Wash. Ct. App. 2004).

**4.** ***Morris v. Matthews* Does Not Apply.** Finally, the majority opinion has erroneously relied upon *Morris v. Mathews*, 475 U.S. 237, 106 S. Ct. 1032, 89 L. Ed. 2d 187 (1986), to support its rejection of the *Price* opinion in this case. Simply put, a careful reading of *Morris* clearly shows that *Morris* has no application to the facts of the instant case.

In *Morris*, the defendant and a co-conspirator robbed a bank in Ohio. During their getaway, the police chased them to a farmhouse. The co-conspirator was shot twice while inside the farmhouse. At the time of the defendant's arrest, it was not known how the co-conspirator had been shot. However, not long after the defendant was arrested, a coroner issued a report indicating the co-conspirator committed suicide. Based upon the coroner's report, the defendant was indicted only on aggravated robbery charges. The defendant eventually entered a guilty plea to aggravated robbery. Two days after the defendant pled guilty to aggravated robbery, he made statements that

20

indicated he, in fact, killed the co-conspirator. According to the defendant's statements, the co-conspirator shot himself but did not die. However, the defendant decided to kill the co-conspirator in order to claim that the co-conspirator kidnapped him and forced him to take part in the robbery. Once the prosecutor learned how the co-conspirator had been killed, the defendant was charged with aggravated murder. A jury convicted the defendant of aggravated murder and he was sentenced to life in prison. The case was litigated on a claim of double jeopardy several times before the state appellate courts. Eventually, a federal court of appeals found that the Double Jeopardy Clause prevented the defendant from being convicted of "aggravated" murder, because the conviction was based upon conduct that involved the bank robbery–which had already been litigated through a guilty plea. The federal court of appeals determined that the defendant was entitled to a new trial on a charge for murder only, not aggravated murder. The United States Supreme Court granted certiorari to determine what remedy was available to the defendant.

The Supreme Court's decision in *Morris* is distinguishable from *Price*. *Morris* stated that *Price* requires a new trial whenever a defendant has been acquitted of a greater charge, but convicted of a lesser charge, and the state nevertheless prosecutes the defendant for the greater charge on retrial. On the other hand, the facts of *Morris* were different. The opinion in *Morris* pointed out that "[t]he jury did not acquit [the defendant] of the greater offense of aggravated murder, but found him guilty of that charge and, *a fortiori*, of the lesser offense of murder as well." *Morris*, 475 U.S. at 245,

21

106 S. Ct. at 1037. *Morris* held that, in this unique situation, the defendant does not have to be given a new trial when the evidence supports a conviction for a lesser included offense. The opinion stated that "where it is clear that the jury necessarily found that the defendant's conduct satisfies the elements of the lesser included offense, it would be incongruous always to order yet another trial as a means of curing a violation of the Double Jeopardy Clause." *Morris*, 475 U.S. at 247, 106 S. Ct. at 1038.

Under *Morris*, an appellate court may impose a conviction for a lesser included offense upon a defendant when a defendant has been convicted of the greater offense in violation of the Double Jeopardy Clause. Clearly, in the instant proceeding, Mr. Frazier was never convicted of the greater offense–he was acquitted of the greater offense; therefore, the holding in *Morris* has no application.

**5.     Conclusion.** In sum, due to the majority opinion's reckless rejection of well reasoned and binding Supreme Court precedent, one can only hope that Mr. Frazier's attorneys will bring this matter to the attention of the United States Supreme Court. Having seen the majority's total disregard for the United States Supreme Court's well-settled decisions, I am confident that the United States Supreme Court will swiftly and deftly reverse the majority's decision.

In view of the foregoing, I dissent. I am authorized to state that Justice Benjamin joins me in this dissenting opinion.