Joseph Henry BROWN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 18, 1977.

Rehearing Denied July 1, 1977.

Jack Emory Farley, Public Defender, Anna H. Isaacs, Larry H. Marshall and Kevin M. McNally, Asst. Public Defenders, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

The appellant, Joseph Henry Brown, was found guilty under two counts of an indictment charging him with attempted robbery, KRS 506.010, 515.020, and being a persistent felony offender, KRS 532.080. He appeals from a judgment sentencing him to 20 years' imprisonment in accordance with the persistent-offender verdict. KRS 532.-080(4)(c).

A bifurcated trial was held before the same jury pursuant to KRS 532.080(1), which provides that when a defendant is charged with being a persistent felony offender "the determination of whether or not he is such an offender and the punishment to be imposed . . . shall be determined in a separate proceeding from that proceeding which resulted in his last conviction. Such proceeding shall be conducted before the court sitting with the jury that found the defendant guilty of his most recent offense unless the court for good cause discharges that jury and impanels a new jury for that purpose."

The most serious contention made in support of a reversal is that the trial court erred in refusing to order separate juries for the two phases of the trial. The appellant argues also that it was error to permit (1) an in-court identification by a witness who before the trial had been shown a photograph of the appellant, and (2) the

introduction of an indictment or indictments in connection with his previous felony convictions. We shall discuss the latter two points first.

The witness Tandra Robinson, a 16-year-old girl, did not come forward as a witness until the day before the trial, when on her own initiative she visited the office of the Commonwealth's Attorney and reported that she had seen the incident in question from across the street. Having identified the appellant on direct examination, she admitted under cross-examination that she had never seen him before the occasion of the crime and that the prosecutor had shown her a photograph of him. Asked whether she would have "known that was Mr. Brown out there that night"[1] if she had not seen the picture, she replied as follows:

A—"You really can't tell pictures anyway. People change."

Q—"If you hadn't seen the picture, could you tell whether this was the man the same man that was out there on the 16th?"

A—"Yeah, I know he's the same man as the man I seen."

■ The victim of the crime knew the appellant and had identified him positively and convincingly. It is doubtful that Tandra's evidence added anything, but even assuming that it did, and assuming for purposes of the argument that it should have been excluded, there can be no reversible error here for the simple reason that there was no objection to it in any form at any time during the trial proceeding.

In the argument of this and other recent criminal appeals we detect what appears to be a failure to appreciate the importance of and necessity for procedural regularity in the conduct of trials. Substantive rights, even of constitutional magnitude, do not transcend procedural rules, because without

such rules those rights would smother in chaos and could not survive. There is a simple and easy procedural avenue for the enforcement and protection of every right and principle of substantive law at an appropriate time and point during the course of any litigation, civil or criminal. That is not to say that form may be exalted over substance, because procedural requirements generally do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated. Without them every trial would end in a shipwreck.

We recognize that there are cases in which some grave impropriety in the course or conduct of a trial is so conducive to injustice that procedural blundering must be waved aside. Beyond cavil, this is not one of them.

■ It was not necessary for the Commonwealth, in the second phase of the trial, to introduce copies of the indictments in question. Again, however, the only specific objection[2] was directed toward an F.B.I. sheet listing a number of charges and convictions, and that objection was sustained. Moreover, even though one of the previous convictions was for detaining a woman against her will, under an indictment charging rape, in view of the fact that one of the other five convictions proved by the Commonwealth was for rape we see no possibility that the appellant really was prejudiced.

■ Before the case was tried the appellant moved that the two counts of the indictment be severed and tried before different juries. His theory was and is that the right to testify in his own defense in the first stage of the trial would be unconstitutionally diminished by the prospect that if he did so he would be forced to admit

---

1. She said the crime took place in the "daytime." According to the prosecuting witness, it happened between 5:30 and 6:00 P.M. on January 16, 1976, when "it wasn't fully dark."

2. Appellant had objected earlier to the introduction of photographs and prison records and, when the Commonwealth had begun to offer its exhibits, defense counsel stated to the court that "we would have a continuing objection to each and every one of these," but at no time did he express an objection to inclusion of the indictments.

(through cross-examination impeaching his credibility as a witness) his previous felony convictions to the same jury that would later try the question of whether those convictions had in fact been adjudged against him. Corollary to this proposition, he contends that if he did have separate juries, admission of the previous convictions elicited from him during the first stage could not be used against him in the second stage because that would effectually violate his 5th Amendment protection against self-incrimination. According to this reasoning, he could appear as a witness for himself in the first stage and admit one or more of the prior convictions, but elect not to testify in the second stage and be at the same time protected against the Commonwealth's proving its case in the second stage by introducing the information it had drawn from him for impeachment purposes in the first.[3]

Before the advent of the Kentucky Penal Code, which took effect on January 1, 1975, it was customary in the trial of habitual-criminal indictments to introduce the prior convictions in chief, along with the evidence on which the prosecution relied for a conviction on the current or primary charge. This, of course, allowed the jury's deliberations with respect to the defendant's guilt or innocence on the primary charge to be influenced by a knowledge of his criminal record. A defendant's right to testify for himself has always carried the price that if he did so the jury would gain the same knowledge through exercise of the Commonwealth's right to impeach his credibility, but at least he had the choice. In a habitual-criminal case he had no choice.

More than once the old procedure was attacked as unconstitutional, but it withstood those attacks. See *Murray v. Commonwealth*, Ky., 474 S.W.2d 359, 360 (1971); and *Thomas v. Commonwealth*, Ky., 412 S.W.2d 578, 579 (1967), citing the same re-

sult in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Insofar as we are advised, *Spencer* has not been overruled,[4] and although we no longer have the old procedure, the point of relevance here is that unless that procedure is currently held unconstitutional, neither can the procedure followed in this case be unconstitutional, because certainly it was more favorable to the defendant than the old one-stage trial would have been.

■ The obvious purpose of the bifurcated trial in a recidivist prosecution is to shield the defendant from the unfair influence his previous convictions are bound to have on the jury in determining his guilt or innocence of the crime for which he is presently being tried. It is at this first stage that the evil existed, and that is the only evil the statute was designed to eliminate. It was not intended to give him a bonus at the other end. The Hobson's choice of electing to remain silent or subjecting himself to impeachment remains unchanged. If he elects to testify, what he says can be used against him in the second stage of the trial to the same extent that it can be used against him as an admission in a wholly separate trial for a different offense.

■ The ultimate logic of the appellant's argument is that if a defendant elects to testify, and by so doing is forced to admit his prior convictions, this admission can never be used against him in any other proceeding, because it would violate his right to testify in his own behalf. If that were true, then it seems to us that the very right to impeach him also invades that right and, indeed, so does the right to cross-examine him. We do not accede to it. If the defendant in a criminal case wants to be a witness, he just has to do it under the same terms and conditions and undertake the same risks and burdens as any other witness. The Constitution cloaks him in a mul-

---

**3.** Some method in this apparent madness may be divined from the fact that Brown seems to have used different names from time to time, hence it was not a foregone conclusion that the Commonwealth would be able to establish his

identity with respect to one or more of the previous convictions.

**4.** See *Dawson v. Cowan*, 531 F.2d 1374, 1376–77 (6th Cir. 1976).

titude of special favors and protections, but not yet does it crown him king.

The judgment is affirmed.

All concur.