RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1225-MR

WASTE SERVICES OF THE
BLUEGRASS, LLC; AND WASTE
SERVICES REALTY, LLC                                                APPELLANTS


APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE PHILLIP J. SHEPHERD, SPECIAL JUDGE
ACTION NO. 17-CI-00264


SCOTT COUNTY BOARD OF
ADJUSTMENT; KIM STAMPER,
JANET HOLLAND, SONYA
BARNETT, ANNA ISAACS, AND
KEITH LANCASTER, IN THEIR
OFFICIAL CAPACITIES AS
MEMBERS OF THE SCOTT COUNTY
BOARD OF ADJUSTMENT; JOE
KANE, IN HIS OFFICIAL CAPACITY
AS PLANNING DIRECTOR OF
GEORGETOWN-SCOTT COUNTY
PLANNING COMMISSION; SCOTT
COUNTY FISCAL COURT; AND
SCOTT COUNTY, KENTUCKY                                                APPELLEES

AND                          NO. 2018-CA-1226-MR


MICHELLE AND JOHN DAVID
MCCALL; MICHAEL ROSZKOWSKI;
LORRI AND JON LITTRELL; ANN
AND JAMES R. HARTMAN; CASEY
LEA AND SHAWN CROSS;
RHONDA AND JIM CROSS;
MARTHA E. MADDIX; NORRIS
STACY; JOANN C. WARNER;
CHASSIDY AND CHRISTOPHER
FIGHTMASTER; TOMMY LEE
JAMISON; AND LINDA STACY                    CROSS-APPELLANTS


                CROSS-APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE PHILLIP J. SHEPHERD, SPECIAL JUDGE
                        ACTION NO. 17-CI-00264


WASTE SERVICE OF THE
BLUEGRASS, LLC; WASTE
SERVICES REALTY; SCOTT
COUNTY BOARD OF
ADJUSTMENT; KIM STAMPER,
JANET HOLLAND, SONYA
BARNETT, AND ANNA ISAACS, IN
THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE SCOTT COUNTY
BOARD OF ADJUSTMENT; JOE
KANE, IN HIS OFFICIAL CAPACITY
AS PLANNING DIRECTOR OF
GEORGETOWN-SCOTT COUNTY
PLANNING COMMISSION; SCOTT
COUNTY FISCAL COURT; AND
SCOTT COUNTY, KENTUCKY                        CROSS-APPELLEES

AND                          NO. 2018-CA-1240-MR


SCOTT COUNTY BOARD OF
ADJUSTMENT; KIM STAMPER,
JAMES HOLLAND, SONYA
BARNETT, ANNA ISAACS AND
KEITH LANCASTER, ALL IN THEIR
OFFICIAL CAPACITIES AS
MEMBERS OF THE SCOTT COUNTY
BOARD OF ADJUSTMENT                          CROSS-APPELLANTS


                    CROSS-APPEAL FROM SCOTT CIRCUIT COURT
v.          HONORABLE PHILLIP J. SHEPHERD, SPECIAL JUDGE
                          ACTION NO. 17-CI-00264


SCOTT COUNTY FISCAL COURT;
SCOTT COUNTY, KENTUCKY; JOE
KANE, IN HIS OFFICIAL CAPACITY
AS PLANNING DIRECTOR OF
GEORGETOWN-SCOTT COUNTY
PLANNING COMMISSION; WASTE
SERVICES OF THE BLUEGRASS,
LLC; AND WASTE SERVICES
REALTY, LLC                                  CROSS-APPELLEES


AND                          NO. 2018-CA-1241-MR

SCOTT COUNTY FISCAL COURT;
AND SCOTT COUNTY, KENTUCKY                    CROSS-APPELLANTS


-3-

CROSS-APPEAL FROM SCOTT CIRCUIT COURT
v.      HONORABLE PHILLIP J. SHEPHERD, SPECIAL JUDGE
ACTION NO. 17-CI-00264


WASTE SERVICES OF THE
BLUEGRASS, LLC; WASTE
SERVICES REALTY, LLC; SCOTT
COUNTY BOARD OF
ADJUSTMENT; KIM STAMPER, IN
HER OFFICIAL CAPACITY AS A
MEMBER OF THE SCOTT COUNTY
BOARD OF ADJUSTMENT; JAMES
HOLLAND, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
SCOTT COUNTY BOARD OF
ADJUSTMENT; SONYA BARNETT,
IN HER OFFICIAL CAPACITY AS A
MEMBER OF THE SCOTT COUNTY
BOARD OF ADJUSTMENT; ANNA
ISAACS, IN HER OFFICIAL
CAPACITY AS A MEMBER OF THE
SCOTT COUNTY BOARD OF
ADJUSTMENT; KEITH
LANCASTER, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
SCOTT COUNTY BOARD OF
ADJUSTMENT; JOE KANE, IN HIS
OFFICIAL CAPACITY AS
PLANNING DIRECTOR OF
GEORGETOWN-SCOTT COUNTY
PLANNING COMISSION; MICHELLE
AND JOHN DAVID MCCALL;
MICHAEL ROSZKOWSKI; LORRI
AND JON LITTRELL; ANN AND
JAMES R. HARTMAN; CASEY LEA
AND SHAWN CROSS; RHONDA
AND JIM CROSS; MARTHA E.
MADDIX; NORRIS STACY; JOANN

C. WARNER; CHASSIDY AND
CHRISTOPHER FIGHTMASTER;
TOMMY LEE JAMISON; AND
LINDA STACY                                          CROSS-APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, KRAMER, AND MAZE, JUDGES.

GOODWINE, JUDGE:  Appellants Waste Services of the Bluegrass, LLC and

Waste Services Realty, LLC (collectively "Waste Services") appeal from the Scott

Circuit Court's July 13, 2018 order granting summary judgment in favor of Scott

County Board of Adjustment and Scott County Fiscal Court (collectively "Scott

County").  The circuit court determined the Scott County Board of Adjustment's

adoption of Scott County Planning Commission Director Joe Kane's zoning

determination was not arbitrary.  Scott County, Joe Kane, and Scott County

Citizens cross-appeal.  After careful review, finding no error, we affirm.

## BACKGROUND

In its July 13, 2018 order affirming the decision of the Scott County

Board of Adjustment ("SCBOA"), the Scott Circuit Court summarized the

background of this case as follows:

> Petitioners Waste Services of the Bluegrass, LLC
> ("WSB") and Waste Services Realty, LLC ("WSR") are
> Kentucky Limited Liability Companies with their
> principle places of business in Lexington, Kentucky.

-5-

WSB is an environmental services company that owns and operates a sanitary landfill ("the Landfill") on its property located off Double Culvert Road in Scott County, Kentucky.  The Landfill is currently located on a 102.8-acre tract of land of which 46.8 acres are actively used to dispose of refuse.  The previous owner of the site, the City of Georgetown ("the City"), had also used the site as a landfill.  WSB claimed in its complaint that without expansion, the Landfill has less than five (5) years of remaining useful life.  To lengthen the estimated useful life of the Landfill to eighteen (18) years, WSB sought to purchase 500 acres of adjoining land owned by WSR and expand the refuse disposal area to occupy the entirety of the original 102.8-acre tract; the additional 500-acre tract was to be used as a "borrow" source for dirt, as a site for sedimentation ponds, and as buffer zone between the Landfill and adjoining properties.  WSB claims the 500-acre property was not meant to be used for refuse disposal.

In 2012, WSB's corporate predecessor began the Landfill expansion permit application process by filing a permit request with the Commonwealth of Kentucky Energy and Environment Cabinet, Department for Environmental Protection, Waste Management Division ("KYDEP").  The permitting process is lengthy and involves substantial administrative and technical review. As part of the application process, WSB was required to obtain a certification from the local zoning authority that the plan complies with local zoning laws.  While former Georgetown Scott County Planning Commission ("GSCPC") Director Earl Smith [("Smith")] issued a certificate of compliance in 2013, current GSCPC Director Joe Kane would later issue a letter ("the Kane Letter") stating that the wording of the certificate appeared to only certify part of the Landfill expansion plan and that the other part of the plan could not proceed without a conditional use permit or rezoning.  The conflict that resulted from the Kane Letter ultimately led to an appeal which was heard before SCBOA on March

-6-

14, 2017.

The hearing was attended by SCBOA members Keith Lancaster, Janet Holland, Sonya Barrett, Kim Stamper, and Anna Issacs; GSCPC Director Joe Kane; WSB representative James Wade; and various Scott County residents. Counsel for the parties also participated in the hearing; Charlie Perkins appeared on behalf of SCBOA; Jon Woodall and Jacob Walbourn appeared on behalf of WSB; William Lear and D. Barry Stilz appeared on behalf of Joe Kane; Glenn Williams appeared on behalf of the Scott County Attorney's Office; Thomas Nienaber appeared on behalf of Scott County; and Stephen Porter appeared on behalf of a group of affected Scotty County residents.

The hearing primarily consisted of testimony by James Wade, Joe Kane, and their counsel. After the parties testified and were examined, a period of public comment was held. SCBOA then deliberated and issued its final determination, finding that Joe Kane had the authority to issue his letter and concurring with his analysis that the proposed use of the 500-acre tract did not comply with Scott County Ordinances.

WSB and WSR then filed suit, alleging that SCBOA "ignored, disregarded, and/or failed to consider" substantial evidence that Respondent Kane was without authority to issue his January 18, 2017 clarification/ revocation letter ("the Kane Letter") and that Kane "misinterpreted and/or failed to properly apply" Scott County Zoning Ordinances. Pet'rs' Compl. at 9-10. WSB requests that the Court find that SCBOA's denial of WSB's appeal was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence in the record as a whole and clearly erroneous, in violation of Sections 1 and 2 of the Kentucky Constitution; that SCBOA's decision exceeded its statutory grant of authority; that SCBOA grant Petitioners' Appeal, vacate SCBOA's determination, and/or remand this matter to

SCBOA for further consideration; and that the Kane Letter is null, void, and without legal effect.

Record at 916-18.

The circuit court determined the record supported the SCBOA's finding that Kane had the authority to clarify or revoke Smith's certificate of compliance letter based on the following evidence:

> The following findings were proved by documentary evidence and testimony at the March 14, 2017 appeal hearing. On August 8, 2013, WSB employee James Wade emailed a request for the certificate of zoning compliance to then-GSCPC Director Earl Smith. Pet'rs' Compl. Ex. 2. Wade attached a certificate of compliance form that he had drafted, which contained WSB's letterhead. *Hearing Transcript* at 67. Earl Smith signed the certificate of compliance form; the form only stated that "the expansion of the landfill *within the current property boundary* does not conflict with Scott County planning and zoning ordinances." Pet'rs' Compl. Ex.s 2 & 3 (emphasis added). The certificate made no reference to the 500-acre parcel; James Wade admitted at the hearing that the "current boundaries" language in WSB's form was not meant to include the 500-acre tract. *Id.*; *Hearing Transcript* at 65-66. Earl Smith forwarded his correspondence with Wade to then-GSCPC Senior Planner Joe Kane, although Kane was not asked to review the transaction. *Hearing Transcript* at 89-90. WSB submitted Earl Smith's certification to KYDEP. In November of 2013, Earl Smith left GSCPC and was ultimately replaced as Director by former GSCPC Senior Planner Joe Kane. *Id.* at 13, 75-76.
>
> In 2015, WSB counsel with the McBrayer law firm requested a zoning letter for both the 500-acre tract and the Landfill tract as part of WSB's mortgaging process;

on August 3, 2015, GSCPC Director Joe Kane responded with a statement that while expanding the landfill within the original tract may not require rezoning, expansion onto the 500-acre parcel could not occur without rezoning or a conditional use permit because it was zoned Agricultural (A-1). Resp'ts' Joint Mot. for Summ. J. Ex. J; *Hearing Transcript* at 30-31. On September 28, 2016, attorney Thomas Breidenstein, representing an unknown client, sent an open records request to Joe Kane; Breidenstein sought all correspondence related to the Landfill. *Hearing Transcript* at 30-31. This caused Kane to perform a document search, which revealed his 2015 memorandum to McBrayer. *Id.*

On October 18, 2016, Breidenstein wrote again to Kane, this time in a letter providing a lengthy analysis questioning the legality of any expansion of the Landfill, even within the original bounds of the property. Resp'ts' Joint Mot. for Summ. J. Ex. K; *Hearing Transcript* at 46. Breidenstein also sent a copy of this letter to Danny Anderson at KYDEP; Anderson responded two days later with a letter titled Notice of Deficiency which was sent to Kane and to WSB. *Hearing Transcript* at 33-34. On November 1, 2016, WSB's counsel responded with a letter contradicting the claims in Breidenstein's October 18 letter. This activity triggered a period of research and consultation between Kane, the City, and landfill engineers, which consultation led Kane to believe that a zoning letter clarifying the expansion project's zoning compliance was warranted. *Id.* at 34-35.

By letter dated January 18, 2017, Joe Kane wrote to WSB acknowledging the prior zoning certification issued by Earl Smith to the extent of the Landfill's expansion within the original property boundaries but stated his finding that the 500-acre tract part of the plan did *not* comply with Scott County Ordinances. Pet'rs' Compl. Ex. 4; *Hearing Transcript* at 35-40. The Kane Letter contained a detailed history and analysis of the

legal status of the Landfill and its use, stating the following:

1) the Landfill property was previously owned by the City, which was exempt from zoning ordinances;

2) upon purchase of the Landfill, WSB was *not* exempt from zoning ordinances but inherited a legal non-conforming use from the City;

3) the non-conforming use would remain valid so long as the entire operation, *including all its supporting ancillary uses*, stayed within the existing parcel boundaries of the land as originally owned by the City;

4) the other, 500-acre tract is currently zoned A-1 Agricultural;

5) using the 500-acre tract as a source for borrow dirt would require clear-cutting a forest, excavating the earth to a depth of up to twenty (20) feet, and processing the clay and rock to obtain workable clay material that can be used for the subsequent construction of waste liner and cover; the foregoing would be done solely to support the Landfill operation and does not constitute commonly accepted agricultural activities;

6) the planned construction of 3.5-acre sedimentation ponds were designed to drain the entire Landfill property and in no way resemble farm ponds;

7) the Landfill expansion plan would constitute the expansion of a non-conforming use which "would require a re-zoning of the property to Light Industrial (I-1) with a Conditional Use Permit or Heavy Industrial (I-2) for the entire area of the proposed landfill expansion. . . .'"

8) WSB's statement in its administrative application, that the planning and zoning commission did not have jurisdiction over the area in question, was misleading and needed rebuttal.

Pet'rs' Compl. Ex. 4; *Hearing Transcript* at 35-40. The Kane Letter also stated, "[t]his letter should be considered the updated and current Zoning Compliance letter." *Id.* At the appeal hearing, Kane discussed the relationship between his letter and Earl Smith's certificate, stating:

> "A topic that was not addressed in the Smith letter—I think the letter from 2013 and my letter from 2015 are not necessarily in conflict—but . . . Earl Smith did not address the 500 acres. He may have been given information about the uses proposed in the expansion, but he gave no evidence of considering that in his reasoning since we do not have . . . an official zoning letter. There was the form signed in the application, and the form simply said that uses on the existing tract are approved as nonconforming uses. It didn't mention the 500 acres at all."

*Hearing Transcript* at 40-41. On January 26, 2017, KYDEP issued a Notice of Deficiency on the expansion permit application, citing the Kane Letter and stating that

KRS[1] 224.40-315(2)(d) requires that "no permit to . . . expand a municipal solid waste disposal facility shall be approved unless . . . the application conforms to and is consistent with applicable zoning regulations. . . ." Pet'rs' Compl. Ex. 5. WSB timely filed its Notice of Appeal with the Scott County Board of Adjustment ("SCBOA") on February 9, 2017, seeking a declaration that the Kane Letter was null and void. Pet'rs' Compl. Ex. 6.

At the March 14, 2017 appeal hearing, Kane agreed with Earl Smith's determination that the expansion of the Landfill within the boundaries of the original tract was acceptable under Scott County Ordinances. *Hearing Transcript* at 38. However, he found that Smith's letter said nothing about the 500-acre tract, and thus the Kane Letter's determination that the 500-acre tract required rezoning did not contradict Smith's prior determination. *Id.* at 37-38. WSB representative James Wade admitted that Earl Smith's certificate did not mention the 500-acre tract at all. *Id.* at 65-66.

William Lear, Kane's special counsel, also gave testimony regarding Earl Smith's zoning determination. Lear showed that, even if Earl Smith had addressed the 500-acre tract in his determination, that determination would have been void if it was contrary to Scott County Ordinances. *Id.* at 43-44. Per Scott County Ordinance §5.5(A), "[t]he Enforcement Officer has initial authority for the literal enforcement of the Zoning Ordinance. He has no discretionary authority to allow any departure from the literal conformance with the Zoning Ordinance." Resp. SCBOA & Scott County Fisc. Ct's Reply and Memo. of Law of Scott County, Ex. A; *Hearing Transcript* at 43-44.

---

[1] Kentucky Revised Statutes.

Therefore, if Earl Smith issued a certificate of compliance for a project that did not comply with the relevant ordinance, he was without authority to do so. Ordinance §5.5(B) states "[t]he Board of Adjustment has authority to hear appeals from decisions by the Enforcement Officer and to make literal interpretations of the pertinent provisions to correct any possible misinterpretation by the Enforcement Officer." Resp. SCBOA & Scott County Fisc. Ct's Reply and Memo. of Law of Scott County, Ex. A; *Hearing Transcript* at 43-44.

At the close of the hearing, [a] SCBOA member moved to affirm that Joe Kane had the authority to issue the Kane Letter. The motion was stated thus: "based on my literal and reasonable evidence that was presented here tonight, that I support that – with substantial evidence – that the letter submitted by Joe Kane is within the scope of his authority, and after following the timeline of the evidence that was presented, that is why I base my decision." *Hearing Transcript* at 161. Upon suggestion by counsel, the movant added some specific factual findings to the Motion: that the Landfill was purchased from the City in 1999; that the land was bought by a private company in 2010; that the permit process began in 2012; that Earl Smith wrote his letter in 2013; that Joe Kane wrote his opinion in a letter in an open records request in 2015, and that he wrote the letter again in 2017. *Id.* The Movant from SCBOA then added "[b]ased on that, I feel like he did what we as the County have paid him to do, to look out for the County." *Id.* The Motion was unanimously approved. *Id.*

While the wording of the motion does not specifically identify why Kane had the authority to write his letter, the evidence and testimony before the committee made it abundantly clear that Smith never actually recorded any determination with respect to the proposed use of the 500-acre tract; as such, Kane was well within his authority as an initial enforcement officer

-13-

to render an initial opinion with respect to the 500-acre tract. SCBOA's determination that Kane had authority to issue the letter was thus based on substantial evidence in the record, and its determination was not arbitrary.

R. at 920-26.

Furthermore, the circuit court concluded the record supported Kane's determination that the zoning rules prohibit ancillary landfill operations on the 500-acre tract based on the following evidence:

As shown above, Earl Smith never officially addressed the proposed use of the 500-acre tract. At the appeal hearing, a great deal of testimony concerning the approved uses for land zoned A-1 Agricultural. Counsel for WSB argued that Earl Smith intended to certify the entire expansion project, including the 500-acre tract, and attached an affidavit from Smith which stated, ". . . based upon the thorough review of all relevant and necessary documents and regulations, I concluded that the Expansion, as proposed, was and would be in accord with the applicable planning and zoning regulations at that time." *Hearing Transcript* at 17; Pet'rs' Mot. for Summ. J. Ex. 9. However, at no point did either Smith's affidavit or the testimony of WSB's counsel give any specific argument or analysis regarding whether the ancillary Landfill activities were appropriate for land zoned A-1 Agricultural. Petitioners simply reiterated that Earl Smith's certificate blessed the whole project and avoided any real discussion regarding the tract's agricultural zoning or an analysis of related ordinances. Petitioners' only real arguments on this point were raised in filings, primarily in Jon Woodall's February 9, 2017 Notice of Administrative Appeal to SCBOA. Pet'rs' Mot. for Summ. J. Ex. 8, at 7-8. Woodall argued that Scott County Ordinances do not prohibit soil removal and stated that soil removal is a normal agricultural activity; his analysis did not mention

-14-

the fact that WSB planned to remove up to twenty (20) feet of soil, nor did the analysis address the language in Scott County Ordinances defining Agricultural zones as those meant for "continuing farm use." *Id.*

Respondents, by contrast, spent a great deal of time at the hearing and in their filings addressing the Agricultural zoning question. In addition to the analysis supplied by the Kane Letter, Joe Kane testified that he was not swayed by the argument that the proposed uses of the 500-acre tract were agricultural; specifically, he stated that the twenty (20) foot depth of clay excavation required the transport and processing of the waste containment material, the necessary construction of roadways, piping, retention ponds, and the constant presence of heavy equipment were not agricultural in nature. *Hearing Transcript* at 39-40. Kane's counsel, William Lear, stated that the proposed soil excavation was not just for topsoil but would necessarily go all the way into the clay, that landfill liner material has certain technical requirements which would necessitate its processing, and that such activities do not fit the definition of the A-1 zone which is "intended . . . to conserve agricultural lands for continued farm use." *Id.* at 51-52. Lear also cited the statutory definition of "Agricultural use" at KRS 100.111(2), which identifies growing crops and raising livestock, and stated that nothing in that definition is close to the proposed uses of the 500-acre tract. *Id.* at 52. Lear also stated that landfills were a conditional use allowed in a light industrial zone, that clay is a mineral, and that extraction, storing, and processing of minerals is a conditional use allowed in a heavy industrial zone. *Id.* at 53.

Various members of the public also denied that the proposal qualified as an agricultural use. Stephen Porter, testifying on behalf of several Scott County residents, stated that clay is a mineral, that mining clay is only an accepted conditional use in an industrial zone, and that

-15-

the proposal's clay excavation would require the 500-acre tract to be rezoned. *Id.* at 114. Bruce Kohnz stated that Scott County Ordinance § 2.1 defines "agricultural use" as the use of a tract of at least five contiguous acres for the production of agricultural or horticultural crops, including livestock, poultry, grain, hay, pastures, and so on; he also stated that it is unquestionably clear that WSB's intended use of the property is not agricultural by this definition. *Id.* at 123-24. Beth Emery argued that sedimentation ponds were not agricultural in nature, stating that the ponds would be akin to "special waste ponds" as defined by KRS 224.50-760. *Id.* at 132. Finally, Michelle and David McCall stated that they raise cattle very close to the landfill and that no part of the landfill is agricultural. *Id.* at 134-35.

After deliberating, SCBOA moved to adopt Joe Kane's determination that the proposed use of the 500-acre tract was unacceptable for land zoned A-1 Agricultural. The Movant stated: ". . . based on the facts that we have heard about the proposed use of the 500 acres . . . we find that it is definitely not within the definition of an agricultural use and that it is a necessary attachment . . . to the . . . actual landfill where they deposit the trash . . . and the action that is done there is essentially part of the Landfill and therefore requires Planning Commission approval for the non-conforming use because it's owned by . . . private property owners, and therefore we support Joe Kane's finding in that regard." *Id.* at 162-63. The Motion was also unanimously approved. *Id.* at 163.

Based on wealth of documentary and testimonial evidence before SCBOA, the Court finds that the Board's ruling—that the proposed uses of the 500-acre tract were not agricultural in nature, and the tract required rezoning for the planned expansion—was based on substantial evidence and was not arbitrary.

R. at 926-28.

Thus, the circuit court granted the Scott County Respondents' motion for summary judgment and denied Petitioners' motion for summary judgment. This appeal and cross-appeals followed.

## ANALYSIS

Before we reach the merits of Waste Services' arguments on appeal, we must address the deficiency in their brief. Scott County points out that Waste Services' brief lacks a preservation statement citing to the record on appeal where the issues it raises were properly preserved for appeal in violation of CR[2] 76.12(4)(c)(v). "There are rules and guidelines for filing appellate briefs. Appellants must follow these rules and guidelines, or risk their brief being stricken, and appeal dismissed, by the appellate court." *Koester v. Koester*, 569 S.W.3d 412, 413 (Ky. App. 2019) (citing CR 76.12). Waste Services' brief fails to "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by CR 76.12(4)(c)(v). "It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester*, 569 S.W.3d at 415 (citing *Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky. 2003)). Our procedural rules "are lights and buoys to mark the channels of safe passage and assure an expeditious voyage

---

[2] Kentucky Rules of Civil Procedure.

-17-

to the right destination." *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977)). Therefore, an appellant's compliance with this rule allows us to undergo "meaningful and efficient review by directing the reviewing court to the most important aspects of the appeal[,] [such as] what facts are important and where they can be found in the record[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*, 328 S.W.3d at 696 (citation omitted). Because Waste Services' argument fails on the merits, we will ignore the deficiency and proceed with our review.

On appeal, Waste Services argue the circuit court erred in granting summary judgment because Kane's letter and SCBOA's ratification of it were arbitrary. Our review of a zoning action is limited "to a determination of whether the action taken was arbitrary, and neither the trial court nor this Court is authorized to conduct a *de novo* review of the decision." *Warren County Citizens for Managed Growth, Inc. v. Board of Com'rs of City of Bowling Green*, 207 S.W.3d 7, 16 (Ky. App. 2006). In reviewing whether the zoning decision was

-18-

arbitrary, we are limited to three considerations: "(1) whether the agency exceeded its statutory authority; (2) whether the parties were afforded procedural due process; and (3) whether the agency decision was supported by substantial evidence." *Harrison Silvergrove Property, LLC v. Campbell County and Municipal Board of Adjustment*, 492 S.W.3d 908, 912 (Ky. App. 2016) (citations omitted).

Under the first prong, Waste Services argue the Kane Letter exceeded statutory authority under KRS 100.261 because neither Kane nor any other injured party appealed the Smith certificate of compliance letter within 30 days, rendering the Kane Letter void. Waste Services further argue SCBOA exceeded its statutory authority in ratifying the Kane Letter. Scott County argues Waste Services' argument would require the SCGPC to appeal its own decision. Scott County asserts Waste Services offered no testimony or other evidence to suggest the Smith certification of compliance letter was sent to any person or entity except Joe Kane. At the time of the Smith certification, Kane was employed as a "planner" and later by SCGPC. As zoning administrators, both Kane and Smith were representatives of SCGPC.

KRS 100.261 provides:

> Appeals to the board may be taken by any person, or entity claiming to be *injuriously affected or aggrieved* by an official action, order, requirement, interpretation, grant, refusal, or decision of any zoning enforcement

-19-

officer.  Such appeal shall be taken within thirty (30) days after the appellant or his agent receives notice of the action of the official by filing with said officer and with the board a notice of appeal specifying the grounds thereof, and giving notice of such appeal to any and all parties of record.  Said officer shall forthwith transmit to the board all papers constituting the record upon which the action appealed from was taken and shall be treated as and be the respondent in such further proceedings.  At the public hearing on the appeal held by the board, any interested person may appear and enter his appearance, and all shall be given an opportunity to be heard.

(Emphasis added.)

Waste Services failed to assert that any person or entity was "injuriously affected or aggrieved" by the Smith certification.  As Scott County points out, aside from WSB representative James Wade, Joe Kane, who was employed by SCGPC at the time, was the only person who received the Smith certification letter.  Based on the evidence in the record, both Smith and Kane believed landfill operations would continue on the original 102-acre tract, so neither was injured or aggrieved by Smith's certification letter.  As such, there was no basis for an appeal under KRS 100.261, and we hold the Kane Letter was not rendered void for failure to appeal.

Even if an appeal should have been taken, Smith lacked the authority to allow ancillary landfill operations on the 500-acre tract without a proper zoning change.  KRS 100.271 provides:

-20-

An administrative official shall be designated by the city or county to administer the zoning regulation, and, if delegated, housing or building regulations. The administrative official may be designated to issue building permits or certificates of occupancy, or both, in accordance with the literal terms of the regulation, but may not have the power to permit any construction, or to permit any use or any change of use which does not conform to the literal terms of the zoning regulation.

This statute specifically prohibits Smith and Kane from authorizing "any use or any change of use which does not conform to the literal terms of the zoning regulation." *Id.* As Kane testified, the 500-acre tract is zoned A-1 Agricultural, and it is clear the intended uses of the tract are prohibited in an A-1 zone. Thus, even if the Smith certification applied to the 500-acre tract and no injured or aggrieved party appealed it, the Smith certification would be void as to Waste Services' intended uses.

Waste Services also contest the SCBOA's authority to ratify the Kane Letter under KRS 100.261. Because we held the Kane Letter was not void for failure of any party to appeal, the SCBOA had the authority to uphold Kane's Letter stating that ancillary landfill operations could not occur on the 500-acre tract without a zoning change. Thus, we hold the Kane Letter was valid, and the SCBOA acted within its statutory authority in upholding the Kane Letter.

Under the second prong, Waste Services argue they were denied due process before the Kane Letter was issued. "The hallmark of procedural due

process is 'the opportunity to be heard at a meaningful time and in a meaningful manner.' That is, notice and an opportunity to be heard." *Harrison Silvergrove Property, LLC*, 492 S.W.3d at 915 (citations omitted). In zoning actions, litigants are afforded an opportunity to be heard under the following circumstances: "When a city legislative body makes a zoning change, it must make a finding of adjudicative facts necessary to support the change. These findings must be made from and supported by the evidence heard at a trial-type hearing." *Warren County Citizens for Managed Growth, Inc.*, 207 S.W.3d at 18 (footnote omitted).

Waste Services' argument is disingenuous as they clearly attempted to circumvent the proper rezoning process in obtaining the Smith certification letter in 2013. The Smith letter was a certificate of compliance KYDEP required as part of Waste Services' application for a landfill expansion permit. There was no trial-type hearing before the Smith letter because Waste Services did not apply for a zoning change of the 500-acre tract.

Waste Services do not argue they were denied procedural due process when Waste Services' counsel requested a zoning letter for the 500-acre tract and the Landfill tract as part of a mortgaging process. In response to this request, Kane issued a 2015 memorandum informing Waste Services that expansion of the Landfill within the existing tract may not require rezoning, but expansion onto the 500-acre tract could not occur without rezoning because it was zoned A-1

-22-

Agricultural. In 2016, counsel for an unknown client triggered "a period of research and consultation between Kane, the City, and landfill engineers, which consultation led Kane to believe that a zoning letter clarifying the expansion project's zoning compliance was warranted." R. at 922. This resulted in the issuance of the 2017 Kane Letter, which was meant to clarify the Smith letter.

Waste Services knew in 2015 they would have to apply for rezoning of the 500-acre tract to use it for ancillary landfill purposes and participated in the research and consultation process that ensued in 2016. Despite their participation in this process, which was for a certificate of compliance for their KYDEP application and not an application for rezoning, Waste Services argue Kane unilaterally issued the letter notifying KYDEP of the zoning deficiency. Based on our review of the record and applicable law, Waste Services were on notice and participated in the process that lead Kane to issue his 2017 deficiency notice to KYDEP. A formal trial-type hearing and findings of fact were not required because Waste Services sought a certificate of compliance for expansion of the Landfill and did not apply for rezoning of the 500-acre tract. Thus, Waste Services were not denied due process.

Under the third prong, Waste Services argue both the Kane Letter and SCBOA's decision to uphold the Kane Letter were unsupported by substantial evidence.

> A decision that is not supported by substantial evidence is clearly erroneous and therefore arbitrary. Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. In its role as a finder of fact, the Planning Commission is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact.

*Warren County Citizens for Managed Growth, Inc*, 207 S.W.3d at 16 (footnotes omitted).

Waste Services again argue Kane lacked authority to issue his 2017 letter because no timely appeal was taken of the Smith letter, and, as a result, SCBOA lacked authority to uphold Kane's determination. As discussed above, Kane did not exceed his statutory authority in issuing the 2017 letter, and SCBOA did not exceed its authority in upholding the Kane Letter.

Scott County asserts the evidence that Waste Services intended to use the 500-acre tract for ancillary landfill operations, which was not permitted in an A-1 agricultural zone, was overwhelming and uncontroverted. Kane testified that a borrow pit would require clear-cutting a forest, excavating the earth up to a depth of twenty feet and processing clay and rock for construction of waste liner and cover, and construction of two 3.5-acre sedimentation ponds in no way resembled farm ponds. As such, those uses were not permitted in an A-1 Agricultural zone. It is also clear from the record that, in order to use the 500-acre tract for these

purposes, Waste Services would need to apply for a rezoning of the property to Light Industrial (I-1) with a conditional use permit or Heavy Industrial (I-2) for the entire area of the proposed landfill expansion. Thus, we hold Kane's and the SCBOA's decisions were based on substantial evidence and were not arbitrary.

Next, we turn to Scott County's, Kane's, and Scott County Citizens' arguments on cross-appeal. Scott County argues: (1) Waste Services lacked statutory standing because it failed to plead that it was "injured and aggrieved" under KRS 100.347(1); and (2) WSR failed to exhaust administrative remedies before the SCBOA. Kane argues: (1) Waste Services waived any appeal of the circuit court's dismissal of their claims against Kane by failing to raise it in their initial brief; or (2) alternatively, the circuit court correctly dismissed claims against Kane. Scott County Citizens argue: (1) they had and have a right to intervene under CR 14.01; or (2) alternatively, they should be granted permissive intervention under CR 24.02.[3] Because we affirm the circuit court's ruling on the merits, the arguments raised in these cross-appeals are rendered moot.

## CONCLUSION

For the foregoing reasons we affirm the judgment of the Scott Circuit Court.

---

[3] A separate motion panel of this Court denied Scott County Citizens' motion to intervene by order entered October 22, 2019.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Robert E. Maclin III
Jon A. Woodall
Scott A. Schuette
Lexington, Kentucky

BRIEFS FOR APPELLEES/
CROSS-APPELLANTS,
SCOTT COUNTY BOARD OF
ADJUSTMENT AND SCOTT
COUNTY FISCAL COURT:

Bruce E. Smith
Henry E. Smith
Nicholasville, Kentucky

Thomas R. Nienaber
Florence, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT,
JOE KANE:

D. Barry Stilz
Lynn Sowards Zellen

BRIEFS FOR CROSS-
APPELLANTS,
SCOTT COUNTY CITIZENS:

Bethany A. Breetz
Louisville, Kentucky

Stephen T. Porter
Louisville, Kentucky