RENDERED:  OCTOBER 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-0833-MR

TONYA FORD                                                    APPELLANT

ON REMAND FROM THE KENTUCKY SUPREME COURT
(FILE NO. 2019-SC-0538-DG)

APPEAL FROM TAYLOR CIRCUIT COURT
v.        HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 10-CR-00162

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, LAMBERT, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  This matter is before us on remand from an opinion of

the Kentucky Supreme Court in *Ford v. Commonwealth*, No. 2019-SC-0538-DG,

2021 WL 3828505 (Ky. Aug. 26, 2021).  The Supreme Court affirmed our

conclusion that Ford's counsel did not render ineffective assistance on the issue of

jury instructions affecting the outcome of the proceeding. Upon holding that the manifest injustice standard set out in *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010), did not apply to the intentional flaunting of the civil rules by defense counsel in the formatting of his written argument, the high court reversed and remanded on Ford's remaining issues for consideration on their merits. Having closely studied the record and the law, we again affirm the order of the Taylor Circuit Court.

### Facts and Procedural History

On August 24, 2012, a jury convicted Appellant of murdering her husband, David Ford, and she was sentenced to twenty years in prison. Evidence was adduced at trial that Appellant shot her husband, who had numerous affairs during the marriage, in the back of his head after he told Appellant that he wanted a divorce and that he was moving in with his latest paramour. Appellant confessed to her mother that she committed the murder. Evidence was offered that Appellant's fingerprints were on a threatening note discovered near the body, and cell phone records showed that she was in the vicinity of the murder at the time it occurred. Witnesses testified that Appellant said she would kill David if she discovered that he was cheating on her again.

At trial, the Commonwealth called Jerome McNear, an AT&T analyst, who produced a propagation map of Taylor County showing where various cell

towers were located and the areas to which they provide coverage. His testimony placed Appellant in the general vicinity of the murder scene at the time the murder was committed. His testimony contradicted Appellant's earlier claim that she was fifteen minutes away from the murder scene getting coffee at a Sonic fast food restaurant.

Similarly, Kentucky State Police Detective Israel Slinker engaged the services of Russ McIntyre to create a map identifying where and when calls were made from Appellant's cell phone. McIntyre was a Kentucky National Guard analysist assigned to Kentucky State Police drug enforcement. At trial, and based on McIntyre's information, Detective Slinker offered his opinion that Appellant was in the vicinity of the murder scene at the critical time.

Appellant's conviction was affirmed by the Kentucky Supreme Court.[1] In June 2015, she filed a Kentucky Rules of Criminal Procedure (RCr) 11.42 motion seeking to vacate her conviction based on ineffective assistance of counsel and prosecutorial misconduct. The Taylor Circuit Court conducted a two-day hearing, and rendered a comprehensive order denying her motion for RCr 11.42 relief and her motion to set aside her conviction based on her claim that her due process rights were violated and because the Commonwealth failed to produce certain evidentiary items.

---

[1] *Ford v. Commonwealth*, No. 2012-SC-000624-MR, 2014 WL 1118198 (Ky. Mar. 20, 2014).

Ford appealed to this Court and moved for leave to exceed the 40-page limit for her appellate brief. Ford's first brief was returned to her as non-compliant for exceeding the page limit. When Ford's renewed motion to exceed the 40-page limit was denied, Ford's counsel filed a second appellate brief, this time with a smaller font and narrower margins than allowed by the civil rules.

We regarded the filing of Ford's second non-conforming brief as a blatant attempt to circumvent the rulings of this Court and the civil rules.[2] While noting that minor formatting errors might not require redress, we determined that

---

[2] We stated the following:

> It has come to the Court's attention that Appellant's brief is not in conformity with Kentucky Rules of Civil Procedure ("CR") 76.12(4)(a)(ii). This rule requires the appellate brief to utilize 12-point font, with a 1.5-inch margin on the left side and 1-inch margins on all other edges. Appellant's brief appears to employ a font smaller than that required by the rule, with more lines per page than can be achieved with 12-point font, and margins which are smaller than 1.5 inches on the left and 1 inch on all other edges. The result is that counsel has compressed more than 40 pages of material within the 40 page limit, albeit in non-conformity with the Civil Rules.

> Appellant's non-compliance with CR 76.12(4)(a)(ii) appears to be intentional. It came about in the context of this Court's denial of her renewed motion to exceed the 40-page limit, and her first brief having been returned to her as non-compliant. We may reasonably conclude, then, that counsel intentionally sought to circumvent the Civil Rules and the Orders of this Court to achieve via purposeful non-compliance what was otherwise denied to her by her compliance. Accordingly, we are compelled to address counsel's intentional non-compliance.

Ford's attempt to avoid this Court's rulings did require remediation. We turned to *Hallis*, which held that,

> [o]ur options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

*Hallis*, 328 S.W.3d at 696.

Rather than ignore the deficiency or strike Ford's brief, and given the gravity of the underlying offenses, we chose to examine the circuit court proceeding for manifest injustice in conformity with *Hallis*. That review resulted in an opinion affirming the order of the Taylor Circuit Court.

Ford, through counsel, then prosecuted a second appeal to the Kentucky Supreme Court. In an unpublished opinion rendered on August 26, 2021, the high court affirmed – albeit for different reasons – our conclusion that Ford's trial counsel did not provide ineffective assistance affecting the outcome of the proceedings as to counsel's failure to object to the jury instructions. The Court then opined that the manifest injustice standard set out in *Hallis* should be applied solely to instances of lack of preservation, and not broadly to other violations of CR 76. Said the high court, "[a] review of both *Hallis* and *Elwell* make clear that the manifest injustice standard of review is reserved only for errors in appellate

briefing related to the statement of preservation."[3]  *Ford*, 2021 WL 3828505, at *5.

It went on to state that,

> we acknowledge the apparent intentional misconduct of
> Ford's counsel.  In no way should this Opinion be read to
> condone such conduct or to suggest appellate courts have
> no redress for this type of conduct.  An appellate court,
> when faced with a situation such as this, can issue a show
> cause order for the offending attorney and, after a
> hearing, impose contempt sanctions on the attorney if
> warranted.  A court can also report unethical conduct to
> the Kentucky Bar Association and, in fact, may be
> required to in certain circumstances pursuant to Kentucky
> Supreme Court Rule 3.130(8.3).

---

[3] *Hallis* addressed both a lack of preservation *and* a significant deviation from the formatting
standard mandated by CR 76.12.  It also expressly applied the manifest injustice standard to
"rules" (plural) violations as opposed to only the "rule" (singular) requiring preservation.  The
*Hallis* Court stated:

> It is a dangerous precedent to permit appellate advocates to
> ignore procedural rules.  Procedural rules 'do not exist for the mere
> sake of form and style.  They are lights and buoys to mark the
> channels of safe passage and assure an expeditious voyage to the
> right destination. Their importance simply cannot be disdained or
> denigrated.' *Louisville and Jefferson County Metropolitan Sewer
> Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown
> v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977)).
> Enforcement of procedural rules is a judicial responsibility of the
> highest order because without such rules '[s]ubstantive rights, even
> of constitutional magnitude, . . . would smother in chaos and could
> not survive.' *Id.*  Therefore, we are not inclined to disregard
> Vaughn's procedural deficiencies.

*Hallis*, 328 S.W.3d at 696.  The *Hallis* Court then applied the manifest injustice standard to the
brief's "procedural deficiencies." *Id.*

*Ford*, 2021 WL 3828505, at *6. The high court then reversed our opinion on those issues where we employed the manifest injustice standard and remanded them to us for adjudication.

**Arguments and Analysis**

The Kentucky Supreme Court affirmed our conclusion that Ford is not entitled to RCr 11.42 relief from judgment based on her counsel's failure to object to the Commonwealth's tendered jury instructions. As such, that issue is not now before us. Ford first argues that her trial counsel made a critical error in failing to obtain an expert to rebut the Commonwealth's claim that Appellant's cell phone records placed her in the area of the murder at the time it occurred. She asserts that Detective Slinker improperly testified to expert matters without demonstrating qualification as an expert and that Slinker used maps produced by McIntyre that were not disclosed to defense counsel. As the Commonwealth properly notes, this argument is an amalgam of ineffective assistance of counsel and *Brady*[4] violations.

In examining the ineffective assistance argument, the trial court found that Appellant's counsel chose not to retain a cell phone tower expert primarily because of financial considerations. It determined that this failure was deficient performance thus satisfying the first prong of the *Strickland* test.[5] It also

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[5] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

concluded, however, that this failure did not affect the outcome of the proceedings, and thus did not satisfy the second prong of the *Strickland* test.

We agree with the trial court's reasoning on this issue. During the RCr 11.42 hearing, Appellant gave a new story attempting to demonstrate that while she was in the vicinity of the murder scene at the time of the murder, she was looking at a rental house near West Saloma Road which is located near the murder scene. The trial court characterized this claim, which was raised for the first time after her conviction, as "unfounded and unbelievable," and a "complete fabrication" to provide a plausible explanation for being near the murder scene. Thus, counsel's failure to produce an expert cell phone tower witness did not affect the outcome of the proceedings, as Appellant admitted to being in the vicinity of the murder at the time it occurred. Further, such expert testimony would not have overcome the strong circumstantial evidence, including Appellant's admission to her mother that she killed David. As there was no prejudice, there is no basis for RCr 11.42 relief. *Strickland*, *supra.*

In her related argument, Appellant contends that a *Brady* violation occurred when the Commonwealth failed to disclose that Russ McIntyre created cell phone tower coverage maps that were later relied on by Detective Slinker when Slinker testified at trial. Appellant maintains that if the Commonwealth had disclosed McIntyre's identity as the author of Slinker's maps and opinion,

reasonable counsel would have objected and had those opinions excluded at trial. She asserts that this failure to disclose constitutes a *Brady* violation, because there is a reasonable probability that the outcome of the trial would have been different but for Detective Slinker's testimony.

We review *de novo* whether the conduct of the Commonwealth pertaining to the evidentiary issue constitutes a *Brady* violation. *Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015) (citing *Commonwealth v. Bussell*, 226 S.W.3d 96, 100 (Ky. 2007)). *Brady* holds in relevant part that the prosecution's suppression of evidence at trial constitutes a Due Process violation if the evidence is material to either guilt or sentencing. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyle v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

The question for our consideration, then, is whether Appellant has demonstrated that the disclosure of McIntyre would have resulted in a different verdict. We must answer that question in the negative. It is uncontroverted that McIntyre did not testify at trial, but rather offered his opinion to Detective Slinker during the investigative phase. Further, the trial court made a factual finding that "the testimony of [AT&T specialist] Jerome McNear was also generally consistent

-9-

with the preliminary work of Russ McIntyre." The import of this finding is that the opinions given by McIntyre to Detective Slinker during the investigation are substantially the same as the opinion of expert witness McNear at trial. Ultimately, we conclude that Appellant has not produced a basis for finding that a reasonable probability exists that, but for the nondisclosure of McIntyre, the outcome of the proceeding would have been different. The cell phone issue was but one element of the Commonwealth's case against Appellant, which included her threat to kill David, fingerprint evidence, and admission of guilt to her mother. In sum, the prejudice element of the *Brady* analysis cannot be shown, and we find no error.

Appellant next argues that her trial counsel was ineffective when he failed to conduct a basic investigation of her alibi witnesses and present their testimony at trial. She maintains that her trial counsel's errors were compounded by the Commonwealth's failure to disclose an exculpatory statement of an alibi witness and Slinker's false testimony regarding that undisclosed statement. As Appellant's defense at trial centered on her claim that she was not present at the murder scene when the crime was committed, she asserts that her trial counsel had a duty to produce witnesses who were employed at a Sonic restaurant where Appellant claimed to be at the time of the murder. Specifically, Appellant maintains that her trial counsel could not recall whether he interviewed Sonic employees Gribbons and Yocum who may have been able to testify that Appellant

-10-

was at the Sonic restaurant shortly after 11:00 a.m. on the morning of the murder. The substance of Appellant's argument on this issue is that there is a reasonable probability that absent her trial counsel's failure to investigate Sonic employees Gribbons and Yocum, the result of her trial would have been different. Pursuant to *Strickland*, Appellant argues that she is entitled to have her conviction vacated.

Trial counsel has full authority to manage the conduct of the trial. *Commonwealth v. Tigue*, 459 S.W.3d 372, 385 (Ky. 2015) (citing *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)). Defense counsel's reasonable investigation must not mimic the investigation of the best criminal defense lawyer in the world, blessed with unlimited time and resources, but rather must provide an investigation which is reasonable under the circumstances. *Foley v. Commonwealth*, 17 S.W.3d 878, 885 (Ky. 2000), *reversed on other grounds by Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005). A defendant is not guaranteed errorless counsel, nor counsel judged ineffective by hindsight, but counsel who renders reasonably effective assistance. *McQueen v. Commonwealth*, 949 S.W.2d 70, 71 (Ky. 1997).

In the matter before us, Appellant's defense counsel presented two alibi witnesses in an attempt to bolster her version of the timeline. Even if her trial counsel called Gribbons and Yocum to the witness stand, their testimony would have been cumulative rather than unique. And further, the other evidence against

Appellant was compelling. When reviewing the record in its totality, we cannot conclude that her trial counsel's assistance was ineffective on this issue, nor that the failure to call Gribbons and Yocum affected the outcome of the proceedings. *Strickland*, *supra*. And while the trial court determined that the recorded interview of Gribbons was inadvertently not provided to Appellant, there again is no reasonable probability that it affected the outcome of the proceedings. As such, the trial court properly found no *Brady* violation.

Appellant goes on to argue that her trial counsel was ineffective for failing to object to Slinker's testimony about the handwriting found on a threatening note and failing to investigate the note. Additionally, she asserts that a *Brady* violation occurred concerning another letter found in the victim's truck.

A threatening note was found near David's body. Neither the Commonwealth nor defense counsel conducted a handwriting analysis. In addition, Detective Slinker did not testify as to such an analysis, nor did he offer an opinion regarding who wrote the note. Rather, Slinker testified as to his opinion that the handwriting on the note looked disguised. At the RCr 11.42 hearing, the trial court ruled that her trial counsel's failure to object to Detective Slinker's testimony did not prejudice the proceedings against Appellant.

We find no error in this conclusion. There is no basis for concluding that her trial counsel's representation of Appellant was ineffective based on his

decision not to conduct an expert analysis of the note. *Arguendo*, even if her trial counsel's decision did constitute ineffective assistance, it did not affect the outcome of the proceedings. *McQueen*, *supra*. Further, the trial court correctly determined that there was no *Brady* violation regarding another note found in David's truck. While this note was not turned over to Appellant's counsel, she has failed to demonstrate that the note – which the Commonwealth characterizes as not exculpatory – would have had any effect on the jury's decision to return a guilty verdict. We find no error on this issue.

Appellant's next argument is that her trial counsel was ineffective in failing to object to statements made by the Commonwealth as part of its closing argument. During direct examination at trial, Detective Slinker was asked if he thought it "would be normal" for an innocent spouse to make a 911 call from just outside the residence in the edge of the yard. In answering, Slinker equivocated by saying it depended on whether a third-party gunman was in the residence, and whether anyone was checking for signs of life from the victim. At closing argument, the Commonwealth relied in part on this testimony by mentioning that "most reasonable people would think" that an innocent spouse who discovered the body would run to a neighbor's house in case a gunman was in the residence. Appellant now argues that her trial counsel was ineffective in failing to object to this and related statements.

In examining this argument at the RCr 11.42 hearing, the trial court concluded that her trial counsel should have objected to the Commonwealth's statements as to what reasonable people might do when discovering a murdered spouse. It went on, however, to find that the statements at issue had no bearing on the outcome of the trial. This conclusion is supported by the record and the law, and we find no error arising therefrom.

Appellant also argues that her trial counsel was ineffective for failing to interview Carl Lusk, and that a *Brady* violation occurred when a recorded interview of Lusk was not given to her. Lusk was a Taylor County Emergency Rescue Chaplain who accompanied Appellant to the bathroom at a neighbor's house, and an issue arose to as whether Appellant washed her hands in the bathroom after expressly being told not to do so in order to preserve any gunshot residue.

Appellant's hands were never tested for gunshot residue, and as such, no gunshot residue results were offered into evidence. Accordingly, Lusk's testimony, if any, regarding whether he heard or did not hear Appellant washing her hands in the bathroom is largely irrelevant. This is especially true in the context of all of the evidence of guilt presented against Appellant. As Lusk's testimony, if any, would not have affected the jury's verdict, there is no basis for finding ineffective assistance of counsel nor a *Brady* violation. For the same

reason, we find no error as to Appellant's penultimate argument that her trial counsel was ineffective for failing to explore the possibility of an alternative perpetrator.

Appellant's final argument is that the foregoing errors constitute cumulative error sufficient to reverse the judgment on appeal. Citing *Funk v. Commonwealth*, 842 S.W.2d 476, 483 (Ky. 1992), Appellant maintains that even if each of the errors presented do not individually constitute grounds to vacate her conviction, the cumulative effect of them rendered her trial fundamentally unfair and constituted a violation of due process.

We are not persuaded that the purported individual errors are sufficient to constitute cumulative error justifying a reversal of her conviction. As noted by the Kentucky Supreme Court, "we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010) (citation omitted). We find no cumulative error.

## Conclusion

For the foregoing reasons, we affirm the order of the Taylor Circuit Court denying Appellant's motion for RCr 11.42 relief.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Margaret A. Ivie
Kelsey Doren
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky
(former)

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky